THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BERNARD MARSHALL *et al.*, Defendants-Appellants.

First District (1st Division)   No. 76-472

Opinion filed July 11, 1977.

Reilley, Bell & Weinberg, of Chicago (Marshall Weinberg and James W. Reilley, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Gary W. Adair, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Bernard Marshall and Raymond Marshall were found guilty of armed robbery but not guilty of attempt murder. Each was sentenced to a term of 8 to 24 years. Both have appealed.

At trial, Dennis Zurawski testified that on July 7, 1974, he was employed as a manager at the Beacon Motel in Harvey, Illinois. At about 12:15 a.m., he was in the living room of his manager's apartment, adjacent to the motel office, when he was summoned to the office by a bell which indicated the presence of a customer. A man in the office asked for a room. Zurawski told him that none was available. The prospective customer then left the office.

Shortly thereafter Zurawski went out of the motel by a rear door. He heard someone call out to him. He turned and saw the same individual. The man was standing near an automobile which appeared to be a 1973 or 1974 brown Thunderbird with a black vinyl top. Zurawski noted that the license number was TY 8124. After responding that he had to clean a room, Zurawski turned and began to walk away.

The man called out to Zurawski again. Upon turning around, Zurawski saw that the man was pointing a gun at him. At the other's demand, Zurawski put his hands up and walked toward the car. The other man held the gun at his back, toward his side. The witness was told that the man and his companions were "going in for the money." Then two or three additional men emerged from the automobile. The witness observed a motel customer whom he knew walking through the parking lot toward the front door of the office. At that point, the witness was

pulled behind a tree by the man he had first seen in the motel office. One of the other men removed a gun from the witness' belt. The gun belonged to the motel owner.

Three men escorted the witness toward the back door of the motel and into the office. The two additional persons were of small stature and carried guns. Zurawski identified these men at trial and Raymond Marshall and Bernard Marshall. In the office, Raymond Marshall opened a drawer and removed about $150 in cash. He asked Zurawski where there was more money. Raymond Marshall and one of the other armed men walked together with Zurawski into the bedroom where Zurawski pointed to a drawer. Raymond Marshall removed $250 or $300 from the drawer.

Raymond Marshall then told Zurawski that he would kill him. When Zurawski told him that there was no safe, Raymond Marshall struck him on the head with the gun. The witness fell onto the bed and was told by Raymond Marshall to roll over so that he was lying face down. He complied. After he heard the men leave by the back door, he called the police. Zurawski testified that Raymond Marshall did most of the talking during the robbery. That same night, about half an hour later, Zurawski went with some police officers to a street intersection on the south side of Chicago where he observed the same Thunderbird automobile that he had previously seen at the motel. He identified this automobile at trial from photographs.

About three days after the robbery, Zurawski viewed about 20 photographs of potential suspects. He identified the photograph of Bernard Marshall as one of the men who had robbed him. In court, the witness indicated that he believed that Raymond Marshall was the individual in the photograph he had previously identified. Shortly thereafter he corrected his testimony and stated that he knew that the picture was that of Bernard Marshall, though it appeared to resemble Raymond. He also testified that both Marshall brothers were present during the robbery.

The evidence also shows that after the robbery was completed, the men returned to their car. William O'Donnell had remained in the driver's seat throughout the robbery. He then drove the car onto the Dan Ryan Expressway. After receiving a radio report of the robbery, an Illinois State Police Officer began to follow the automobile. The vehicle matched the appearance and license number of the car used in the armed robbery as described in the radio message. The police car pursued the car carrying defendants at high speeds. Someone shot at the police officers from the rear window of the getaway car. Finally the car stopped and the occupants fired several shots at the police. As additional state troopers arrived and shot at the car carrying the suspects, all but one of them fled.

The driver of the automobile and a wounded companion were arrested. Another individual was found hiding in a nearby tree. Bernard and Raymond Marshall were arrested sometime later.

William O'Donnell testified that on the evening in question he was driving his automobile near 55th and Loomis Streets in Chicago. He met a school friend named Malcolm Wynn, who, accompanied by three companions, asked for a ride. Upon entering the Dan Ryan Expressway, the witness noticed that one of his passengers was pointing a gun at him. In court, he identified that individual as Raymond Marshall. Raymond Marshall said: "We are going to stick something up." O'Donnell stated that he did not "want anything to do with it." He was told by Raymond Marshall that he was in it "whether you like it or not." Raymond Marshall directed the witness to stop at the Beacon Motel and said, "Looks like a nice place to rob." At trial, O'Donnell also identified Bernard Marshall as having been present in the car during these events.

O'Donnell testified that one of the passengers left the car and entered the motel. When he returned the other men also left the car. One remained near the car and pointed a gun at the witness. Another entered the motel office through the front door. Raymond Marshall and Bernard Marshall held the motel manager at gunpoint and then disappeared from view. After about five minutes, they returned carrying a large brown paper bag and jumped into the car. O'Donnell was instructed by Raymond Marshall to drive away from the motel. He entered the expressway and accelerated to about 120 miles per hour. He drove rapidly northward for some time and noticed that he was being followed by a police car with a red light on its top. After leaving the expressway and reentering and leaving again, he heard gunshots and stopped the automobile. He lay on the floor where he remained until approached by a policeman holding a gun. He told the policeman, "Don't shoot, I didn't do anything. I was forced." He was then arrested. He was charged along with Bernard and Raymond Marshall but the State later elected not to prosecute him. At trial, he identified the car he had been driving from a photograph previously identified by the victim as depicting the vehicle used by the robbers.

In this court, Bernard and Raymond Marshall contend that the trial court committed reversible error by denying their pretrial motions to suppress their identifications made by Dennis Zurawski and that they were denied their constitutional right to a preliminary hearing. The State responds that these defendants waived these points by failing to include them in their written post-trial motion; the trial court properly denied Bernard Marshall's oral motion to suppress his in-court identification; the trial court properly denied defendants an opportunity to cross-examine the codefendant William O'Donnell at the preliminary hearing; the trial

court properly denied Raymond Marshall's motion to suppress his identification at the preliminary hearing where the State stipulated that it would not introduce evidence of this identification at trial; and that the trial court afforded defendants a fair trial.

Bernard Marshall first contends that the trial court committed reversible error by denying his motion to suppress his in-court identification by Dennis Zurawski. This witness had identified Bernard Marshall's photograph shortly after the robbery. At trial, he testified on direct examination that the photograph was that of Raymond Marshall. Shortly thereafter, he was recalled for further direct examination and he corrected his testimony. He freely admitted that he had been mistaken because the photograph actually resembled Raymond Marshall. However, his in-court identification of Bernard Marshall was clear and unshaken. He testified that both men were present and spoke to him outside of the motel just prior to the robbery. On cross-examination by able counsel for defendants, he admitted that he could identify only Raymond Marshall as having been present within the motel during the course of the robbery.

Cases cited by defendants which discuss in-court identifications based on suggestive pretrial procedures are inapposite here. There was no evidence that the procedures used by the police in showing photographs to Zurawski were suggestive. In fact the trial court noted, correctly, that no such problem existed concerning the photographic identification.

■■ This court has held that " '* * * convictions based on in-court identifications following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " (*People v. Owens* (1976), 36 Ill. App. 3d 1049, 1053, 344 N.E.2d 525, *appeal denied* (1976), 63 Ill. 2d 561, quoting *People v. Brown* (1972), 52 Ill. 2d 94, 99, 285 N.E.2d 1, citing *Simmons v. United States* (1968), 390 U.S. 377, 382-85, 19 L. Ed. 2d 1247, 1252-54, 88 S. Ct. 967.) Each such case must be analyzed on its own facts. Because the out-of-court identification procedure in the case before us was not suspect, we need not reach the corollary issue of whether the identification in court was based on an origin sufficiently independent of the photographic identification. See, *e.g., People v. Owens*, 36 Ill. App. 3d 1049, 1055.

We will, however, point out that the identifications of Bernard Marshall and Raymond Marshall by both Zurawski and O'Donnell at trial are based upon a fully independent origin and a most ample opportunity for observation at the time of the offense. "We have repeatedly held that the existence of an independent origin will validate an in-court identification even though a previous identification procedure may have been

impermissibly suggestive." *People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409.

■■■ The identification testimony by Zurawski and O'Donnell was not vague or doubtful. On the contrary it was positive and direct. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." (*People v. Jones* (1975), 60 Ill. 2d 300, 307-08, 325 N.E.2d 601.) The law of Illinois does not require a pretrial identification of the defendant by a witness to the crime. *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 18, 337 N.E.2d 454, *appeal denied* (1976), 61 Ill. 2d 604; *People v. Lawless* (1975), 31 Ill. App. 3d 650, 651, 334 N.E.2d 292, *appeal denied* (1976), 61 Ill. 2d 603.

■■ In the main, defendants' argument here is actually an attack upon the credibility of Zurawski as a witness. It is true that in his testimony at trial Zurawski mistakenly referred to a photograph of Bernard Marshall as being Raymond Marshall. But, as above shown, Zurawski corrected this error and cited as a most plausible explanation the facial resemblance of the Marshall brothers. This error by the witness goes only to the weight of his testimony and not to the competence of the identification testimony. In this case the testimony of Zurawski is strongly corroborated by that of O'Donnell. No motion was made by defendants to suppress the identification testimony by O'Donnell. The testimony of these two witnesses is mutually supportive and cumulative. O'Donnell's evidence is corroborated by police testimony that he was the driver of the automobile identified by Zurawski. This interlocking evidence is indeed overwhelming particularly when it is considered in the absence of any denial or element of contradiction.

Defendant Raymond Marshall's contention that Zurawski's identification of him at the preliminary hearing should have been suppressed is readily disposed of. The assistant State's Attorney and counsel for defendants stipulated that evidence of Zurawski's identification of Raymond Marshall at the preliminary hearing would not be introduced at trial. This stipulation was adhered to and this identification was not brought out by the State. As above shown, the in-court identification of Raymond Marshall by Zurawski actually used at the trial was fully competent.

Defendants Raymond and Bernard Marshall contend that they were denied their constitutional right to a preliminary hearing. They urge that they were deprived of their right to cross-examine a witness at the hearing despite decisions by the Supreme Courts of the United States and of Illinois that the preliminary hearing is a critical stage of the prosecution. (*Coleman v. Alabama* (1970), 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999, and *People v. Adams* (1970), 46 Ill. 2d 200, 263 N.E.2d 490.) We regard

the issue here as whether substantial rights have been violated. The categorization of the preliminary hearing as a critical stage of the prosecution is accepted and established concerning the right of the accused to counsel. (See *Adams*, 46 Ill. 2d 200, 206.) But these cases, involving the right to counsel, have no application to the instant contention of defendants.

The record shows that the preliminary hearing in the instant case was held on August 1, 1974. At that time William O'Donnell was represented by his own counsel as were Raymond Marshall and Bernard Marshall and also the remaining two participants in the armed robbery who are not involved in this appeal. At the preliminary hearing the court heard the testimony of Dennis Zurawski, of another motel customer who did not testify at trial but who identified Raymond Marshall, and of a state trooper who had participated in the chase of the Thunderbird automobile. Counsel for all of the defendants participated in a lengthy cross-examination of each and all of these witnesses. These counsel made full use of the right of cross-examination and conducted re-cross-examination. The State then rested. The court inquired as to whether any defense counsel wished to offer testimony. All responded negatively and stated that they rested.

Counsel for William O'Donnell then requested the right to call his client as a witness in his own behalf. The court granted this request and O'Donnell testified in his own behalf. When he mentioned that he had given the State a written statement, the court permitted him to allude to this statement but stated that this reference would be stricken as regards the other defendants in view of the fact that O'Donnell was testifying "for himself alone." The State's Attorney then asked O'Donnell five questions on cross-examination in the course of which O'Donnell identified the remaining four defendants. The court then sustained an objection by the attorney for the Marshall brothers, terminated the cross-examination and refused to permit any of the parties to cross-examine O'Donnell. The court then entered the finding of probable cause as to all defendants and this closed the preliminary hearing.

Indictments were returned against all of the defendants at the September 1974 term of the grand jury. On December 17, 1974, defendant Bernard Marshall filed a motion to quash the indictment alleging that he had not received a prompt preliminary hearing and that during the preliminary hearing Bernard Marshall was severely limited in cross-examination of the State's witnesses. This motion was denied by the trial court. On October 20, 1975, the State filed a detailed answer to defendants' motion for discovery setting out the name of William O'Donnell as a witness who might or might not be called by the State and advising defendants that a written statement by O'Donnell had been

tendered to the defense in open court and that the transcript of the grand jury minutes was available for copying.

The trial was commenced on October 31, 1975. In due course O'Donnell was called as a witness at trial. No issue was raised at that time by counsel for Raymond Marshall or Bernard Marshall regarding the alleged deprivation of rights at the preliminary hearing nor was any request made to the trial court in this regard.

■■ O'Donnell was fully and searchingly cross-examined by two attorneys, apparently both members of the same law firm. One of them acted in behalf of defendant Raymond Marshall and the other in behalf of Bernard Marshall. The right of re-cross-examination of O'Donnell was invoked by the attorneys in most thorough fashion. These experienced attorneys made no mention in their motion for new trial regarding any alleged deprivation of rights in this regard as concerns both Raymond and Bernard Marshall. We find no deprivation of rights of these defendants from this point of view. We conclude that the action of the court at the preliminary hearing in halting the process of cross-examination and in entering a finding of probable cause did not prejudice these defendants or curtail their right to a fair trial.

■■ The Illinois Constitution of 1970 provides in the Bill of Rights that no person is to be tried for a crime punishable by imprisonment in the penitentiary unless the charge has been brought by indictment of a grand jury or that person has received a prompt preliminary hearing to establish probable cause. (Ill. Const. 1970, art. I, §7.) The Supreme Court of Illinois has construed this language to require, alternatively, either trial by indictment or a prompt preliminary hearing for a crime punishable by imprisonment in the penitentiary. (*People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710.) The holding in *Kent* has been noted and followed in *People v. Moore* (1975), 28 Ill. App. 3d 1085, 329 N.E.2d 893, *appeal denied* (1975), 61 Ill. 2d 599. (See also *People v. Latimore* (1975), 33 Ill. App. 3d 812, 815, 342 N.E.2d 209, *appeal denied* (1976), 62 Ill. 2d 591.) In view of the fact that Bernard and Raymond Marshall were indicted with promptness by the grand jury, no preliminary hearing for establishment of probable cause was required by the Constitution of Illinois. See also *People v. Bonner* (1967), 37 Ill. 2d 553, 229 N.E.2d 527.

We have considered and rejected all claims of reversible error advanced by defendants. It follows necessarily that we also reject the final contention of defendants that the combined total of these errors deprived them of a fair trial. In addition, quite aside from the merits of the situation, defendants cannot escape the application of the doctrine of waiver. None of these alleged errors were included in defendants' written post-trial motion. The Marshall brothers stated in their motion that only general errors were being alleged as their attorneys did not yet have a

623

transcript of the trial. The general rule in Illinois is that failure by a defendant to raise an issue in the written motion for a new trial constitutes a waiver of that issue and the issue cannot later be urged as a ground for reversal on review. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

■■ In *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 21, 337 N.E.2d 454, this court held specifically that a general statement of possible errors in a written motion for new trial is not sufficient to preserve unspecified error for appellate review. Therefore, we find that defendants waived the errors alleged by failing to include them in their written post-trial motions. As shown above, none of the errors urged by defendants in this court deprived them of a fair or impartial trial. Furthermore, the evidence is not closely balanced but is overwhelming. Accordingly, this is not a proper case for invocation of the plain error doctrine. Ill. Rev. Stat. 1975, ch. 110A, par. 615(a); see *People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403.

The judgment appealed from is affirmed.

McGLOON and O'CONNOR, JJ., concur.