THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNIE LEE WILSON, JR., a/k/a Lee Wilson, Defendant-Appellant.

First District (2nd Division)    No. 79-2221

Opinion filed February 3, 1981.

James J. Doherty, Public Defender, of Chicago (Ina S. Marks and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, Johnnie Lee Wilson, Jr., also known as Lee Wilson, was charged by indictment with the murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1) of Dexter Brooks and the attempt murder (Ill. Rev. Stat. 1977, ch. 38, par. 8—4) and aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(1)) of Tyrone Flakes. After a jury trial defendant was found guilty of those charges and sentenced to concurrent terms of 30 years for murder and 15 years for attempt murder. On appeal defendant asks this court to determine (1)(a) whether the State committed reversible error when it propounded objectionable questions to witnesses, (b) whether remarks by the prosecutor during opening and closing statements deprived defendant of a fair trial; (2) whether the State failed to prove him guilty beyond a reasonable doubt; and (3) whether the trial judge erred when he failed to state upon the record the factors he considered in arriving at the sentencing determination.

At about 1 a.m. on March 18, 1978, Dexter Brooks and Tyrone Flakes were sitting in a car parked across the street from 1541 South Karlov, Chicago. Flakes testified at trial that his cousin, defendant here, opened the driver's door of the car and began shooting a shotgun. Brooks spun out of his seat and attempted to escape behind the car. Flakes opened his door and also ran to the rear of the car. Defendant shot at Brooks until the latter fell. Defendant then chased Flakes about 15 feet and shot at him two or three more times. Brooks died from wounds he received in his neck, chest, and left hand. Flakes was hospitalized for 2½ months and suffered the loss of a finger, the loss of half a lung, and several broken ribs.

Flakes testified he lived in the same two-flat building as defendant and had known him all of his life. About one month prior to the shooting Tonette Booth moved out of defendant's residence. Flakes testified he and Brooks assisted Booth's move. Included among her belongings was a black, .22-caliber handgun which Brooks subsequently purchased from Booth. Apparently, the handgun was loaned to Booth by defendant. In any event, during a conversation among Brooks, Flakes and defendant, defendant demanded the return of the gun and Brooks refused. Although defendant saw Brooks at least three or four times thereafter, he did not speak to him. Flakes also stated he had previously seen the murder weapon in the home of Dempsey Hamilton.

Dempsey Hamilton testified that he sold the shotgun to defendant a few weeks prior to the shooting. He stated defendant still owed him the sale price of $45. He claimed a friend, Eddie "Bee," was present during the transaction. He also testified that about a week before the sale defendant told him Booth had sold defendant's handgun, but that he wanted it returned.

Odessa Irby, Brooks' mother, testified that after the death of her son, she found a .22-caliber handgun among his belongings.

Employees of the police department testified that the spent casings found at the scene of the shooting all came from the same shotgun, that blood found at the scene consisted of two types which correspond to the victims' blood types, and that both victims were found at the scene in a state of unconsciousness, bleeding heavily.

Investigator Kenneth Spink testified he approached Flakes while the latter was in the emergency room of Mt. Sinai Hospital. Flakes was lying face up on a hospital gurney. A tube was protruding from his chest as hospital staff prepared him for surgery. When Spink asked if Flakes knew who shot him, Flakes responded that he did and that the offender "lived down the street." Spink repeated the question and Flakes again responded that he knew who shot him and that person lived "on the street on Karlov." A doctor then terminated questioning because Flakes was going into surgery.

Testifying in his own behalf, defendant stated that at about 1 a.m. on March 18, he joined Brooks and Flakes in their car to smoke some marijuana. After 5 or 10 minutes he left the car and began to walk home. A gold colored car pulled up with two men who exited the car and called out the first names of Brooks, Flakes, and defendant. Defendant turned around, a shot was fired, and he hit the ground. Several more shots were fired. Defendant stated he then heard the car's doors slam shut. He panicked. He got up, entered his car, and drove to his sister's home in Lockport, Illinois. He returned to Chicago on March 20, and surrendered to police.

On cross-examination defendant admitted he initially told police he arrived in Lockport at 5 p.m. on March 17, and that he had spent that evening with his sister's husband. Defendant further stated police told him Flakes had identified him as the offender.

Police Officer Roderick Height stated under oath that he never told defendant Flakes had identified defendant as the offender. Height testified that Tonette Booth informed the police that defendant was the murderer.

Eddie "Bee" Simpson testified he was never present during a weapons sale between defendant and Hamilton. He also testified that he saw a couple of men get into a gold car just after he heard shots fired on

March 18. He did not see who these men were nor did he see the shots being fired. He did state he saw defendant about two minutes later when defendant allegedly returned to his residence.

After the jury found defendant guilty as charged, the trial court conducted a sentencing hearing and sentenced defendant to concurrent terms of 30 and 15 years on the murder and attempt murder charges, respectively. ˙

## I.

Defendant contends he was denied a fair trial because the State asked two questions over defense objections and made two comments during the opening statement and closing argument that were objectionable. Each of these grounds has been waived.

## A.

■■ Defendant claims error in the State's questioning of Brooks' mother and Officer Height. Brooks' mother was asked what she did with the pistol she found in her son's room. The defense objected and cited the trial court's previous ruling that exhibition of the gun or questions regarding it created unfair surprise to the defense. The trial court sustained counsel's objection and no further questions were asked of that witness. Subsequently, defendant testified he was told by police that Flakes had identified him. In rebuttal, Officer Height testified Tonette Booth informed police of the defendant's involvement. The State then asked a leading question of Height and defense objected. Height was asked what he told defendant about Tonette Booth. Height responded, "That she had saw him with the sawed-off - - -." Defense counsel's objection was sustained. Neither of these testimonial exchanges was stated as grounds for a new trial in defendant's written post-trial motion.

Failure to raise an issue in a written motion for a new trial waives the issue for purposes of appellate review. *People v. Evans* (1979), 80 Ill. App. 3d 444, 454, 399 N.E.2d 1333, *appeal denied* (1980), 79 Ill. 2d 632; *People v. Marshall* (1977), 50 Ill. App. 3d 615, 623, 365 N.E.2d 1122.

## B.

Defendant also claims remarks in the opening statement and closing argument require reversal. In the opening statement the State indicated Flakes suffered the loss of a finger and part of a lung due to the shooting. No objection to the statement was made. The matter was not specified in the written post-trial motion. It was therefore waived for review. *People v. Jones* (1978), 62 Ill. App. 3d 443, 447, 379 N.E.2d 301, *appeal denied* (1978), 71 Ill. 2d 619; *People v. Marshall.*

■■ Defendant similarly waived his claim that the closing argument was improper. In closing argument the assistant state's attorney remarked

upon defense counsel's election not to make an opening statement. Defense counsel did not object to the remark. Although such a remark may be grounds for reversal (*People v. Fuerback* (1966), 66 Ill. App. 2d 452, 457, 214 N.E.2d 330), the trial court immediately instructed the jury, *sua sponte*, to disregard the assistant state's attorney's remark. During the post-trial hearing, the trial court indicated defense counsel could have access to the transcript of the closing argument. Defense counsel elected not to refer to the transcript and stated only general grounds for a new trial in its post-trial motion. Accordingly, this contention is also waived for purposes of review. (*People v. Matthews* (1979), 69 Ill. App. 3d 65, 67, 387 N.E.2d 10; see also *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 21, 337 N.E.2d 454, *appeal denied* (1976), 61 Ill. 2d 604.) In addition, we conclude that neither the questions nor remarks alleged to be error here deprived defendant of a fair or impartial trial. The record discloses overwhelming evidence of defendant's guilt and, accordingly, the plain error doctrine (73 Ill. 2d R. 615(a)) is inapplicable. See generally *People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403.

## II.

We next consider defendant's contention that he was not proved guilty beyond a reasonable doubt. He argues three factors support this contention: Flakes failed to immediately identify him as the murderer during questioning at the hospital; Flakes allegedly described the shooting inconsistently in the light of his wounds; and Eddie "Bee" Simpson denied being present during the alleged sale of the shotgun to defendant.

The testimony of one witness, although contradicted, has been held to be sufficient to convict. (*People v. Evans*, at 451.) Although a time lapse between commission of a crime and identification of the offender may render the identification less credible (see *People v. King* (1973), 10 Ill. App. 3d 652, 656, 295 N.E.2d 258; *People v. Roe* (1965), 63 Ill. App. 2d 452, 456, 211 N.E.2d 552), a time lapse alone does not render a conviction reversible (see *People v. Evans*, at 453; see also *People v. Bell* (1976), 44 Ill. App. 3d 185, 191, 357 N.E.2d 1256, *appeal denied* (1977), 66 Ill. 2d 632). A time lapse between commission and identification bears upon the credibility and weight of a witness' testimony and thus is a factor to be considered by a jury. Furthermore, a jury's determination will not be set aside unless a more immediate identification of the offender would have been natural. (See generally *People v. Bell*, at 190; *People v. King*, at 654; *People v. Roe*.) Under the circumstances of this case we believe the time lapse does not render Flakes' identification of defendant unreliable.

Flakes was interviewed by a police officer while being prepared for surgery made necessary by his assailant. His answers were made while he maintained a fixed stare at the ceiling. Tubes were stuffed into his chest.

First aid was being administered. Under those circumstances incoherence could be expected. Flakes answered that his assailant was known to him and lived either down the street or on the street where Flakes lived. This response was not inconsistent with defendant's residence. In light of the fact that Flakes had ample opportunity to view his assailant, that he knew defendant previously, and that he made an unwavering identification of defendant subsequent to surgery, the identification is not rendered unreliable by a time lapse explicable as natural under the circumstances. Authorities cited by defendant (*People v. King* (where rape victim failed for six months to describe defendant known to her, reasonable doubt exists); *People v. Roe* (where robbery victim failed for almost two weeks to describe defendant known to him, reasonable doubt exists)) are not applicable.

Defendant also argues Flakes' testimony was inconsistent with the wounds he received. Our review of the record discloses that both Flakes and Brooks sustained wounds on their left sides: Flakes was shot in the left foot and Brooks was shot in the left hand. Testimony at trial indicates a shotgun at close range inflicted the injuries. Other injuries were sustained as the victims left the parked car. These injuries are consistent with trial testimony describing the murderer's conduct.

■■ Defendant, however, points to a trial inconsistency which arises over the testimony of Eddie "Bee" Simpson. Dempsey Hamilton, a State witness, testified he sold a shotgun to defendant shortly before the date of the attack, and that Simpson was present during the sale. At trial Simpson denied that allegation. The record reveals other testimony that may have reduced the impact of this contradiction. Simpson conceded he was a friend of defendant. He also testified he saw defendant return to the defendant's house after the sounds of gunshot. This testimony was contradicted by defendant who stated he entered his car and drove to his sister's house. The jury heard Simpson's testimony and apparently rejected it. Such a determination is within the province of the jury. (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.) Absent a record disclosing evidence so improbable as to raise a reasonable doubt of defendant's guilt, the finding of the jury will not be disturbed. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) We find there is adequate evidence in the record to support the jury's verdict beyond a reasonable doubt.

### III.

Finally, defendant claims his sentence was excessive. He also claims the trial court's failure to indicate upon the record its reasons for the sentencing determination requires a new sentencing hearing. We agree.

■■ Section 5—4—1(c) of the Unified Code of Corrections requires the sentencing court to specify on the record what evidence or reason it relies upon in arriving at a sentencing determination. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c).) Where a defendant attacks the court's failure to specify the factors considered, a sentence will not be vacated in the absence of an allegation of an excessive sentence and prejudice. (See, *e.g.*, *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 1077-78, 403 N.E.2d 607.) The trial court gave no reason for the instant sentencing determination. Defendant complains of an excessive sentence. We cannot review that claim when the trial court remained silent as to any factor considered. Neither actual nor substantial compliance with the statute is evident. Therefore, the cause must be remanded for proper sentencing in accordance with section 5—4—1(c).

In accordance with the views expressed herein, defendant's convictions are affirmed, his sentences are vacated, and the cause is remanded for proper sentencing determinations of record.

Convictions affirmed; sentences vacated and remanded.

STAMOS and PERLIN, JJ., concur.