THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES R. BLAIR, Defendant-Appellant.

First District (5th Division)    No. 80-1066

Opinion filed December 28, 1981.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and David K. King, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant James R. Blair was charged by information with burglary. (Ill. Rev. Stat. 1979, ch. 38, par. 19—1.) Following a jury trial, defendant was found guilty and was sentenced to serve an "extended term" sentence of 12 years in the Illinois Department of Corrections. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2.) On appeal, he contends that: (1) it was error for

the State to inform the court prior to any proceedings that there had been plea negotiations; (2) the trial court erred in denying his motion to quash arrest and suppress evidence or, alternatively, in denying a continuance to allow counsel to obtain a rebuttal witness; (3) the court erred in denying defendant's motion for treatment under the drug abuse program; (4) the trial court erred in denying defendant's motion *in limine* which would have excluded evidence of four prior burglary convictions; (5) the trial court erred in not responding to the jury's written inquiry on the instructions; (6) the trial court erred in permitting testimony that defendant was the subject of an intensive surveillance effort by various "tactical units," for this testimony suggested to the jury that defendant was a well-known burglar or criminal; and (7) the court erred in imposing an extended-term sentence.

Defendant has withdrawn the final issue in his reply brief and therefore it is not considered.

On June 13, 1979, defendant was charged with burglary, alleging that on May 26, 1979, he entered an office at 30 North Michigan Avenue in Chicago, the property of Martin Berzon, with intent to commit theft therein. At a pretrial hearing on December 12, 1979, the State informed the court that there had been discussions off the record, and out of the presence of the court, regarding a possible plea offer, and that an offer was refused by the defendant and therefore the State would make no further offers.

### Motion to Quash Arrest

At the above hearing, defendant presented a motion to quash arrest and suppress evidence. Police officers Stubbs and Saternus testified. On Saturday, May 26, 1979, at 1:30 p.m., defendant was observed in an area of downtown Chicago and was put under surveillance by five or six members of the plain-clothed tactical unit who were at all times linked by radio communication. Officer Saternus stated that he had arrested defendant for burglary and for deceptive practice in the past. Officer Stubbs testified that he had arrested defendant before for office burglaries.

While under surveillance defendant was observed going into a hardware store on North Halsted Street. A clerk informed the officers that defendant had purchased a screwdriver there. Defendant then walked to Wacker Drive, reaching the Board of Education Building, which he entered briefly and then exited. He continued his walk eastward to Michigan Avenue. At Michigan he walked a few feet south to the first building, stopped, peered into the entrance, walked back north a bit, walked back to the doorway, looked in again, and then continued southbound on Michigan Avenue. He did a "similar thing" at another building

at Lake Street. He then walked to the building in question, at 30 North Michigan, looked into the building, stood there a while, and entered at about 2 p.m. According to Officer Stubbs, the offices in this building are usually closed on Saturdays. The officers then set up surveillance on the Michigan Avenue entrance to the building and waited. At about 2:20 p.m. defendant came out of the building. He had a large overcoat over one arm which partially covered a portable TV. In the other hand he was carrying a typewriter. According to Officer Stubbs, on weekends the downtown part of Chicago is a "high crime area" for burglaries. Officer Saternus placed defendant under arrest, saying "Hello James. You are under arrest." Officer Stubbs searched defendant, found a screwdriver in his coat pocket, and found a receipt bearing the name Martin Berzon in the overcoat.

Officer Stubbs then entered the building's lobby, found the name Martin Berzon on the directory, and then went to the corresponding office located on the 19th floor. On approaching the office in question, he observed the door was ajar and noticed particles of paint and plaster on the floor. There were pry marks on the wood and lock area. The office was in disarray. According to Stubbs, there had been a man on duty in the lobby. He did not know his position but believed him to have been wearing an elevator starter's uniform. This man was not produced to testify at the hearing.

During the hearing Officer Stubbs testified that another entrance to the building, on Washington Street, is normally closed on Saturday and is locked. On cross-examination Officer Stubbs testified:

"Q. Isn't it a fact that on weekends the entrance into the building is on Washington and not on Michigan?

A. No. It's on Michigan."

Officer Saternus testified likewise on cross-examination. Later, defense counsel requested a continuance to subpoena the manager of the building in question as a rebuttal witness to testify that the customary practice in that building is such that when the building is closed, the entrance used is the Washington entrance, not the Michigan entrance. Counsel stated that he had personal knowledge of the building. The trial court denied defendant's request for a continuance and, after additional argument, denied the motion to quash the arrest.

*Drug Abuse Proceedings*

Defendant filed a petition to be examined or treated under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 *et seq.*). The cause was continued for a Treatment Alternative to Street Crimes (T.A.S.C.) examination of defendant. The trial judge, however, stated that he did not believe defendant was a good candidate whether or not he

was eligible. The court, however, set the matter for a hearing at which the prosecutor contended that since defendant had two prior convictions for Class 2 felonies, he was not eligible for the drug abuse program. A representative of T.A.S.C. testified that they did not have consent from the parole board for defendant's treatment in lieu of prosecution. The court denied the motion for treatment under the drug abuse statute.

### Motion in Limine

After jury selection, the defense made a motion *in limine* to bar evidence of any prior convictions for impeachment of defendant at trial. The prosecutor then had nine certified copies of convictions, all for burglary. The motion was denied. A motion for mistrial was also denied.

### Trial

Officer Saternus testified for the State. At 1:30 p.m. on the date in question, while riding with a partner, he saw defendant walking. He called for some additional tactical units and "placed the subject under surveillance." Other responding "units" who were also "in on the surveillance" maintained radio contact by use of hand held "walkie-talkies."

Officer Saternus then described defendant's movements in detail, tracing his travel across downtown Chicago and leading into the building on Michigan Avenue. Officer Saternus was positioned in front of the building. After 20 minutes defendant exited carrying the coat, typewriter and television. Saternus approached defendant and placed him under arrest.

Officer Stubbs also testified. Responding to a radio broadcast from Officer Saternus, he followed defendant on foot. He testified that he knew defendant and that his name was James Blair. Officer Stubbs described at length the surveillance of defendant, recounting his travels from Halsted Street, where defendant entered the hardware store, and then east to Michigan Avenue. He testified regarding a photograph of the office and the damage to the door. Based on his experience, a screwdriver could be used to open the door. While searching defendant, he uncovered a tube of toothpaste, a toothbrush and stamps, and a wrist radio, in addition to the coat, television and typewriter.

Witness Darryl Mittleman, an employee of the hardware store on Halsted Street, stated that on the subject date an officer questioned him about his selling a screwdriver to a customer. Mittleman identified a trial exhibit as the same make and model screwdriver sold at his store.

Martin Berzon, the complainant, testified that a television, a portable electric typewriter, a corduroy coat, and a wrist radio were missing from his office on Monday morning and that he had not given defendant authority to enter his office. When he returned to the office Monday, he

found it in complete disarray but there was nothing unusual about the door jamb or door.

Just prior to the close of trial, and outside the presence of the jury, defendant testified that he would choose not to testify because the prosecutor had indicated his intention to impeach his credibility with eight certified copies of prior felony convictions. The State then offered to use only four. Defendant responded that he still would not testify due to these four prior convictions.

The jury, over defendant's objection, was instructed regarding an inference arising from the unexplained possession of recently stolen property. (Illinois Pattern Jury Instructions, Criminal, No. 13.21 (1968)) (hereinafter IPI Criminal.) While deliberating, the jury asked in a note to the court whether there was a conflict between the definition of burglary and this instruction. The court wrote the jury: "You have your instructions. Read them and continue to deliberate."

Additional pertinent facts are incorporated into the opinion below.

OPINION

Defendant contends that it was error for the prosecutor to "gratuitously" inform the trial court, prior to any proceedings, that there had been plea discussions off the record, that an offer had been refused, and based on that, the State would make no further offers. Defendant's contention is that this violated Supreme Court Rule 402(f) (73 Ill. 2d R. 402(f)) which provides that if plea discussions do not result in a plea of guilty, such plea discussions shall not be admissible against the defendant in any proceedings.

The State argues that defendant has waived the 402(f) issue by failure to object and by failure to include the issue in his post-trial motion.

After reviewing the entire record, it is apparent that defendant failed to object to the prosecutor's remarks at the time they were made and at each stage of the proceedings. Normally, under these circumstances the defendant has waived any possible error. (See generally *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Benniefield* (1980), 88 Ill. App. 3d 150, 410 N.E.2d 455.) Furthermore, the record discloses that defendant failed to raise the 402(f) issue in his motion for a new trial. Generally, such failure constitutes waiver of the issue for purposes of appellate review. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Wilson* (1981), 93 Ill. App. 3d 161, 416 N.E.2d 1169.

■■ Defendant has not claimed plain error, nor does the record indicate that defendant's plea negotiation was in any way introduced before the jury during the proceedings. Accordingly, we find that defendant has waived the 402(f) issue for review.

Defendant next contends that the trial court erred in denying his

motion to quash arrest and suppress evidence. Defendant presents the question of whether there was probable cause to justify his arrest. He argues that the circumstances leading to his arrest in their totality might be sufficient to raise a "strong suspicion" of burglary, but were not sufficient to make it a certainty, a clear conclusion, that a crime had been committed. Defendant concludes that, at best, an investigatory stop or temporary detention was all that was warranted under the circumstances without some corroboration from within the building that a crime had occurred.

It has been frequently held that probable cause to arrest exists where the circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing an offense had been committed, and that the person arrested committed the offense. (See, e.g., *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356; *People v. Borges* (1980), 88 Ill. App. 3d 912, 410 N.E.2d 1076.) Existence of probable cause depends upon the totality of the circumstances as viewed under practical consideration of everyday life from the point of view of reasonably prudent persons. (*People v. Green* (1980), 88 Ill. App. 3d 929, 410 N.E.2d 1003.) As such, the existence of probable cause may be founded on evidence which would not be admissible at trial and which need not be sufficient to establish guilt beyond a reasonable doubt. (*People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622.) A trial court's finding of probable cause will not be disturbed on appeal unless manifestly erroneous. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.

██ Applying these principles, we believe that the facts recited above, considered in their totality, were sufficient to warrant a person of reasonable caution in believing that the crime of burglary had been committed and that defendant had committed it. We conclude, therefore, that probable cause existed and the arrest of defendant was legally proper.

Defendant has also argued that the probable cause ruling should be reversed because the trial court erred in denying his motion for a continuance to obtain a rebuttal witness at the suppression hearing. This issue was not raised by defendant in his post-trial motion and accordingly is deemed waived. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Wilson* (1981), 93 Ill. App. 3d 161, 416 N.E.2d 1169.

The next issue before us on appeal is whether the trial court erred in denying defendant eligibility for treatment under the drug abuse program pursuant to the Dangerous Drug Abuse Act. Ill. Rev. Stat. 1979, ch. 91½, par. 120.1 *et seq.*

The Dangerous Drug Abuse Act vests discretion in the trial court to determine if a defendant will be offered treatment in lieu of prosecution. Generally, the record must show that the trial court has, in fact, exercised

its discretion where the defendant is eligible for treatment under the Act. (*People v. Morgan* (1977), 50 Ill. App. 3d 962, 365 N.E.2d 1362.) The defendant contends that the trial court erred in denying his petition for drug abuse treatment because such denial was erroneously based upon a comment made by the prosecutor to the effect that defendant was not eligible for treatment due to two prior felony convictions. This contention is without merit.

The eligibility requirements for treatment under the drug abuse program are set forth in section 8 of the Dangerous Drug Abuse Act. (Ill. Rev. Stat. 1979, ch. 91½, par. 120.8.) Section 8 provides in pertinent part as follows:

"An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of a licensed program designated by the Commission instead of prosecution or probation, as the case may be, unless * * * (e) the addict is on probation or parole and the appropriate parole or probation authority does not consent to that election * * *."

In *People v. Phillips* (1977), 66 Ill. 2d 412, 362 N.E.2d 1037, our supreme court held that under this provision, an addicted defendant must affirmatively show that he has obtained the proper consent of his probation or parole officer before the court has the authority to place him in the Act's treatment program.

■■ In the instant case defendant was at all relevant times on parole. From the record it is clear that defendant failed to affirmatively show that he obtained the consent of the appropriate parole authority for treatment under the Act. Accordingly, defendant was ineligible for treatment. In view of the foregoing, defendant's request for treatment under the Act was properly denied.

Defendant next contends that the trial court erred in ruling that the State would be permitted to use four prior burglary convictions to impeach him at trial. At the commencement of the trial defendant presented a motion *in limine* which sought to exclude evidence of any prior conviction which the prosecution might offer for purposes of impeachment of the defendant at trial. At that time the State represented that it had nine certified copies of convictions, all for burglary. The motion was denied. Later, as noted in the above recitation of the facts, the prosecution offered to reduce the number of prior convictions to four.

On appeal, we are asked to consider the propriety of the use of these four prior burglary convictions as impeachment evidence at defendant's trial for the same crime. It is defendant's contention that because of the similarity of the four prior convictions and the instant burglary charge, that he could not have received a fair trial. In response, the State argues that such convictions, relating to crimes of dishonesty, were properly

admissible for impeachment purposes since their probative value outweighed the dangers of unfair prejudice to the defendant.

Generally, crimes punishable by imprisonment in excess of one year or involving dishonesty may be used for impeachment purposes if the trial court determines that the probative value of the prior convictions is not substantially outweighed by the danger of unfair prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; *People v. Smith* (1980), 88 Ill. App. 3d 897, 410 N.E.2d 973.) In determining whether a conviction's prejudicial effect substantially outweighs its probative value, the trial court must consider four factors set forth in *Montgomery*: (1) the nature of the crime, *i.e.*, whether the prior conviction is veracity-related; (2) the nearness or remoteness in time of the conviction to the present trial, as it relates to the degree of defendant's rehabilitation; (3) the subsequent career of the defendant, as it also relates to the degree of defendant's rehabilitation; and (4) the similarity of the prior conviction to the present charge because such similarity often invites an improper inference of guilt rather than directing attention to the defendant's credibility. See *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, *cert. denied* (1968), 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421.

While the four convictions are for the same type of crime as that charged in the instant case, namely burglary, it is not mandatory that they be disallowed. (See, *e.g., People v. Dailey* (1973), 15 Ill. App. 3d 214, 304 N.E.2d 156.) The fourth *Montgomery* factor has not been considered by Illinois courts to be conclusively prejudicial and we have frequently allowed impeachment by use of same or similar crimes. (See, *e.g., People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563; *People v. Hall* (1981), 95 Ill. App. 3d 1057, 420 N.E.2d 1153.) It has also been consistently held in our State that a prior burglary conviction is probative of defendant's credibility and therefore proper impeachment evidence. See, *e.g., People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276; *People v. McNeal* (1980), 88 Ill. App. 3d 20, 410 N.E.2d 480.

We have considered the foregoing in relation to the four burglary convictions sought to be used in the instant case and find that their probative value, considering the first three *Montgomery* factors, outweighs the risk of prejudice that is likely to attend their introduction due to their similarity to the instant crime. Defendant has not raised the issue of prejudice due to the number of convictions sought to be introduced in the instant case. We note, however, that multiple convictions for same or similar crimes have frequently been allowed for impeachment purposes by Illinois courts. See *People v. Hall*; but *cf. People v. McKibbins* (1981), 100 Ill. App. 3d 787, 427 N.E.2d 238, where introduction of 20 prior theft convictions was held to be reversible error.

■■ For the above reasons, we find that the circuit court did not err in

denying the motion *in limine* which would have barred evidence of defendant's prior convictions for burglary.

Next, defendant contends that the court committed reversible error by failing to answer a question posed by the jury regarding two instructions given in the case. The first instruction touched by the jury's question was IPI Criminal No. 13.21. This instruction reads as follows:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary."[1]

The above instruction appeared on page 2 of the instructions to the jury. Page 3 of the instructions contained IPI Criminal No. 14.06, the burglary issues instruction. This instruction enumerated the several propositions the State must prove in order to sustain the charge of burglary, and provided that if any of the listed propositions has not been proved beyond a reasonable doubt, the jury should find the defendant not guilty.

After several hours of deliberation, the jurors submitted a written request to the judge as follows:

"Does the definition of burglary on page 2 conflict with the definition of burglary on page 3? Will each of these definitions stand alone as complete definitions of the charge of burglary? In other words if we find that the State has proved beyond a reasonable doubt the instructions on page 3, is that enough to satisfy the propositions on page 2?"

To this, the judge replied in writing:

"You have your instructions. Read them and continue to deliberate."

Defendant maintains that, in essence, the jury's questions showed that they were in doubt as to whether the instruction on the permissive inference from exclusive possession of recently stolen property could, by itself, sustain the charge of burglary. Since, as defendant argues, such an inference may only be permitted where there is other corroborating evi-

---

[1] Subsequent to the events of this case, the Illinois Supreme Court Committee on Pattern Jury Instructions promulgated its revised criminal instructions. (See Illinois Pattern Jury Instructions, Criminal (2d ed. 1981).) IPI Criminal No. 13.21 has therein been amended to include the following paragraph:

"You never are required to make this inference. It is for the jury to determine whether the inference should be drawn." (IPI Criminal 2d No. 13.21.)

The revised version contains two additional paragraphs which further qualify the inference to be drawn from exclusive possession of recently stolen property. The Committee note accompanying this instruction recommends that no instruction be given on this subject, either in theft cases, or elsewhere. The Committee note recognizes, however, that IPI Criminal No. 13.21 has been approved by numerous Illinois decisions. (See *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) In the instant case we feel that the criteria set forth in *Housby* have been satisfied and therefore the trial court properly submitted this instruction to the jury.

dence of burglary (*People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151), he concludes that the court was duty bound to clarify these instructions, at least by replying in the negative to the jury's questions. (*People v. Land* (1975), 34 Ill. App. 3d 548, 340 N.E.2d 44; see also *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622; *People v. Harmon* (1968), 104 Ill. App. 2d 294, 244 N.E.2d 358.) We do not find that any error was committed.

The *Land* decision and its precursors are distinguishable from the instant case. In *Land* the trial court plainly refused to permit the jury even to inform it as to what portion of the instructions were presenting problems. This court found such conduct by the trial judge to be reversible error, relying upon the general principle expounded earlier by this court in *Harmon* and *Kucala*. In these cases we stated that where jurors have made explicit what points in instructions are troubling them, the trial judge should attempt to clarify them with concrete precision. Yet, in these cases, we found that there was some basis for the jury's confusion with respect to the instructions, either arising from the facts (*Kucala*), or from instructions which did not fully state the law (*Harmon*). We do not find such bases present in the record before us.

██ In the instant case the jury was given, in addition to IPI Criminal No. 13.21 and, among other instructions, the following: IPI Criminal No. 1.01 which told the jurors that they were not to single out particular instructions, that they were to act as the judges of the facts, and that they should consider all the evidence in the light of their own observations and experience; IPI Criminal No. 14.06, which lists the elements of burglary and requires acquittal if any element is not proved beyond a reasonable doubt; IPI Criminal No. 1.02, which stated that jurors were the sole judges of credibility; and IPI Criminal No. 3.02, which described the application of circumstantial evidence. We feel that these instructions fully and adequately instructed the jury on the law as it related to the instant set of facts. The instructions were in clear and common language which the jury could understand, and adequately informed the jury of the burden of proof needed to convict the defendant of the crime of burglary. In *Housby* a similar combination of instructions, taken together, was held to have adequately informed the jury that it had the option of disregarding the inference raised by IPI Criminal No. 13.21, if it so chose. (84 Ill. 2d 415, 434, 420 N.E.2d 151, 160.) Under these circumstances the defendant was not prejudiced by the trial court's failure to further instruct the jury. (See *People v. Tostado* (1981), 92 Ill. App. 3d 837, 416 N.E.2d 353.) Moreover, we reject the defendant's contention that the compound question posed by the jury here could have been clarified by a single negative response. The trial court's direction that the jury follow the instructions should have dispelled any confusion they may have had

concerning the elements necessary to sustain a charge of burglary. (See *People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 405 N.E.2d 844.) Accordingly, we find no error in the trial judge's response to the jury's inquiry.

Finally, defendant contends that the testimony of Officers Saternus and Stubbs regarding the nature of their surveillance of defendant improperly suggested to the jury that the defendant was a well-known burglar in the eyes of the police. (*People v. McMillan* (1970), 130 Ill. App. 2d 633, 264 N.E.2d 554.) The State contends that the defendant has waived this issue and further argues that any prejudicial effect of this testimony was minimal.

Defendant neither objected to the remarks at the time they were made, nor set them forth as error in his written motion for a new trial. Defendant, however, claims that the remarks constitute plain error and may therefore be considered.

■■ Based upon our review of the record, we do not conclude that defendant was deprived of a fair trial or was unduly prejudiced by the police officers' testimony. Nor do we find that the evidence herein was closely balanced so as to require departure from the general rule that issues not properly preserved for review are waived. (*People v. Price* (1979), 76 Ill. App. 3d 613, 394 N.E.2d 1256.) Accordingly, we conclude that defendant has waived this issue for review.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.