THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MELVIN SANTIAGO, Defendant-Appellant.

First District (2nd Division)   No. 86—748

Opinion filed September 22, 1987.

Richard P. Steinken and Sidney I. Schenkier, both of Chicago (Jenner & Block, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Kenneth T. McCurry, and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his murder conviction by a jury and resultant sentence of 35 years' imprisonment. He raises as issues whether the circuit court: (1) erred by refusing to give defense instructions concerning the use of force in self-defense; (2) erred in instructing the jury on an aggressor's justifiable use of force; (3) improperly limited defendant in cross-examination of the arresting police officer; and (4) failed to consider defendant's rehabilitative potential when imposing sentence.

On May 18, 1984, at approximately 6:30 p.m., defendant, Melvin Santiago, then age 17, affiliated with the Spanish Cobras gang, fired six shots from a revolver and killed 14-year-old Tyrone Ellis, a member of the Vice Lords. The shooting took place in Wicker Park, the turf of a group of gangs collectively known as the "People," including the Vice Lords, the Latin Kings, and the Insane Unknowns. The Spanish Cobras are part of a rival group of gangs known as the "Folks."

Five occurrence witnesses who testified at trial all had gang affiliations; Ricky Hill, a member of the Vice Lords; Jessie Arroyo, a former Latin King who associated with the Kings; Lionel Watson, a Vice Lord at the time of the shooting; Nathaniel Hoskins, a Vice Lord; and Ramon Maldonado, a member of the Insane Unknowns. According to these witnesses, after playing basketball, Ellis and a group of friends were walking to a doughnut shop. Suddenly, out of an alley, a group of from three to seven people appeared. Defendant, one of the group from the alley, shouted slogans, such as "KK" (meaning King killer) and "VLK" (meaning Vice Lord killer), and made gang signals with his hands, insulting the Latin Kings. Ellis and his friends froze. Defendant then drew a gun from his waist and fired shots; afterwards, Ellis lay on the ground bleeding from his head. Ellis died at St. Elizabeth's Hospital the next day from a gunshot wound to the head. Defendant had aimed the gun and had clasped it with both hands when he fired.

There was evidence that Ellis and his companions possessed no bottles or other weapons and did not advance upon defendant before the shooting began. The witnesses could not give good descriptions of the group from the alley, but some believed they recognized a person they knew as defendant's cousin.

Defendant provided a number of different accounts of these events. First, he asserted someone else was the shooter; the shooter passed him the weapon afterwards and he threw the gun in an alley. Next, he claimed that, while another person did the shooting, he and a group had sought out Latin Kings to pay them back for earlier chasing him and a friend and scratching the friend's face. His written confes-

sion stated that he bought the gun that day and went to the Kings' neighborhood to retaliate, after the Latin Kings had chased him and a friend. Defendant was accompanied by another friend who did not know what would happen. When they encountered Latin Kings, both sides shouted gang slogans, the Kings ran towards him and he fired six shots. Defendant later told his brother-in-law, Ephraim Sanchez, that he had shot a King, but was really unsure if he had.

At trial, defendant claimed that he decided to buy a gun in April, paid $100 for it that month, but did not receive the gun until May 18. He denied being chased by Latin Kings on May 18; instead, he spent the day at the lake with his sister-in-law and her friends, then visited his grandmother's house before returning home. His sister Sonia then gave him the gun, left for him while he was out. After loading the gun because he would be in hostile territory, he went out to buy a greeting card. He saw a Latin King and then heard a bottle crash while at Milwaukee and Evergreen. Defendant saw a group running up Evergreen towards him shouting gang slogans and then saw another bottle thrown at him. Surprised and scared, defendant opened fire without aiming and shot six times. The Kings ran away, he ran away, and then tried to damage his gun before throwing it onto a viaduct. Defendant testified he had no intention to use a gun or kill the victim. Defendant agreed this was the first time he had mentioned bottles being thrown. In his confession he just told the assistant State's Attorney what the latter wanted to hear.

Defendant had been affiliated with the Spanish Cobras since age 11. He stopped being a Cobra at the end of the summer of 1983, when his family moved out of Wicker Park. He got along with Latin Kings in his new neighborhood, but his family returned to Wicker Park in February 1984. After that he was chased by three Latin Kings once and trapped in a store by Latin Kings another time. He identified Lionel Watson, one of the witnesses, as a Latin King who had harassed him. Latin Kings had shot at him and his family.

With the help of four witnesses, Detective Edward Dickinson located Sanchez and defendant. At lineups that night at the police station, Hill, Arroyo, and Watson identified defendant as the gunman. After being advised of his rights, defendant provided several accounts of the shooting. Later, an assistant State's Attorney talked with Sanchez, defendant finally admitted being the shooter and agreed to make a statement for the court reporter. On May 29, 1984, defendant was indicted on two counts of murder and one count of armed violence. Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2), 33A—2.

At the jury instruction conference, the court agreed to give Illinois

Pattern Jury Instructions, Criminal, Nos. 24—25.09 and 24—25.11 (2d ed. 1981) (hereinafter IPI Criminal 2d) relating to an aggressor's use of force, over defendant's objections. The court rejected two non-IPI instructions tendered by defendant concerning justification, after the State successfully objected that those instructions were argumentative. The State also objected that one instruction involved a crucial issue and the other instruction had not been used previously.

The jury began deliberations at 3:30 p.m. on January 14, 1986. Some time later, they submitted four written questions to the court:

"Could you possibly be more explicit about the justification of voluntary manslaughter and the avenues of escape?

A statement exists that says *** 'and he has exhausted every reasonable means to escape danger other than the use of force which is likely to cause death or great bodily harm to the other person.' Who determines this statement? Is it the jury or is it the person [who] believes that he has exhausted all reasonable means of escape?

Could we have a legal answer in laymans term[s] to 'being justified' and 'not being justified' concerning murder and voluntary manslaughter.

Could we have a legal answer in laymans term[s] on the subject of being provoked."

Defendant then suggested that his proposed justification instructions be given the jury, the State objected, and the court again refused to give those instructions. Instead, the court informed the jury that they had heard the evidence and received their instructions and should continue deliberations. On January 15, 1986, at 3:30 p.m., the jury convicted defendant of murder.

On February 13, 1986, after a hearing, the circuit court sentenced defendant as previously noted. Defendant appeals.

I

■■ ■ Defendant first contends that the circuit court erred by twice refusing to give the jury two instructions concerning justification, defendant's proposed instructions Nos. 22 and 23, initially and later in response to the questions submitted by the jury. Defendant maintains the wording of these instructions was virtually verbatim quotations from appellate court opinions and addressed the facts of this case, supplied impartial guidance and would have cleared up juror confusion.

The rejected instructions were as follows:

"[No. 22.] In judging whether a defendant's use of force in

self-defense was justified, it is the perception of danger, not the actual danger, that must be considered. A defendant is not required to have exercised infallible judgment in a brief period of time while under great stress and excitement.

[No. 23.] It is not necessary for the deceased to have actually possessed or used a deadly weapon to justify a killing in self-defense. If a defendant is confronted with such means or force as to lead to a reasonable belief that he is in danger of loss of life or of suffering great bodily harm, that is all the law requires to justify a killing in self-defense."

The State objected at trial to both instructions as non-IPI and argumentative. Supreme Court Rule 451(a) (107 Ill. 2d R. 451(a)) provides that an applicable IPI criminal instruction should be used unless it does not accurately state the law; when no IPI instruction is available, the instructions given "should be simple, brief, impartial, and free from argument." An applicable IPI instruction should be given in preference to a non-IPI instruction. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 282, 503 N.E.2d 277, *cert. denied* (1987), 483 U.S. ___, 97 L. Ed. 2d 745, 107 S. Ct. 3240; *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 851-52, 449 N.E.2d 980.) Whether a non-IPI instruction should be given is discretionary with the circuit court. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 282, 503 N.E.2d 277.) Courts are especially hesitant to give non-pattern instructions that emphasize certain parts of the evidence. *People v. Pruitt* (1987), 154 Ill. App. 3d 22, 35, 506 N.E.2d 696.

In the case *sub judice*, two IPI instructions were given the jury concerning defendant's use of force in self-defense. IPI Criminal 2d No. 24—25.06 provides that justifiable use of force requires a reasonable belief that such conduct is necessary to defend against imminent use of unlawful force; deadly force is only warranted by a reasonable belief that such force is needed to prevent imminent death or great bodily harm to a defendant or another. Defendant did not object to this instruction being given. The defense offered the instruction which defined reasonable belief (IPI Criminal 2d No. 4.13): "[T]hat the person concerned, acting as a reasonable person, believes that the described facts exist." The IPI instructions given fully stated the applicable law. *People v. Hughes* (1977), 46 Ill. App. 3d 490, 500, 360 N.E.2d 1363.

■ Defendant's proposed instructions were allegedly based upon *People v. Tirrell* (1980), 87 Ill. App. 3d 511, 518, 408 N.E.2d 1202, and *People v. Harling* (1975), 29 Ill. App. 3d 1053, 1060, 331 N.E.2d 653 (No. 22), and *People v. White* (1980), 87 Ill. App. 3d 321, 324, 409 N.E.2d 73, which itself relied on *People v. Motuzas* (1933), 352 Ill. 340, 346-47, 185 N.E. 614 (No. 23). Proposed defense instruction No. 22,

pointing out that the perception of danger is to be considered, not the real danger, was inaccurate as it did not specify, as did *People v. Tirrell* (1980), 87 Ill. App. 3d 511, 518, 408 N.E.2d 1202, and *People v. Harling* (1975), 29 Ill. App. 3d 1053, 1060, 331 N.E.2d 653, that the belief or perception must be reasonable. Further, the remainder of that instruction highlighted facts favorable to defendant, stating that infallible judgment was not required while under stress. (See *People v. Pruitt* (1987), 154 Ill. App. 3d 22, 35, 506 N.E.2d 696.) The proposed instruction was neither neutral nor did it clarify the IPI instructions given. (*People v. Calhoun* (1987), 152 Ill. App. 3d 206, 210, 504 N.E.2d 266.) Proposed defense instruction No. 23 was misleading since it neglected to mention that defendant must not be the aggressor in order to establish self-defense on such terms. (Ill. Rev. Stat. 1983, ch. 38, par. 7—4.) Both instructions were argumentative as well.

Cases defendant relies upon, *People v. Fox* (1983), 114 Ill. App. 3d 593, 596, 449 N.E.2d 261, and *People v. Ellison* (1984), 126 Ill. App. 3d 985, 997-98, 466 N.E.2d 1024, unlike the present case, involve a complete lack of instructions concerning a lesser included offense. More in point is *People v. Hughes* (1977), 46 Ill. App. 3d 490, 499-500, 360 N.E.2d 1363, where tendered defense instructions, assertedly more fully explaining self-defense, reasonableness and the amount of force permissible, were rejected and the IPI instructions given were deemed sufficient. As in *Hughes*, the instructions given the jury here fully covered the applicable law.

■ Defendant also contends that its proposed instructions would have resolved the four questions asked by the jury after its deliberation began. The circuit court in its discretion may decline to answer jury inquiries when the instructions given are readily understandable and sufficiently explain the applicable law. (*People v. Palmer* (1982), 111 Ill. App. 3d 800, 807, 444 N.E.2d 678.) An additional instruction may be misconstrued by the jury as giving the court's opinion on the evidence. *People v. Calhoun* (1987), 152 Ill. App. 3d 206, 211, 504 N.E.2d 266; see *People v. Ross* (1981), 100 Ill. App. 3d 1093, 1097, 427 N.E.2d 868; *People v. Tostado* (1981), 92 Ill. App. 3d 837, 839, 416 N.E.2d 353.

■ In the present case defendant's proposed instructions Nos. 22 and 23 were both inaccurate statements of the law and argumentative. Giving them in response to the jury questions would not have been beneficial. Three of the questions were general, concerning justification for voluntary manslaughter, justification for both murder and voluntary manslaughter, and provocation. The remaining question asked whether the jury's or defendant's belief that no reasonable means of

escape existed is relevant. This latter question could have been answered by defendant's instruction No. 13, which had already been given. (IPI Criminal 2d No. 4.13.) The IPI instructions given previously were clear and in language which the jury could understand. (*People v. Blair* (1981), 102 Ill. App. 3d 1018, 1028, 429 N.E.2d 1375; *People v. Tostado* (1981), 92 Ill. App. 3d 837, 839, 416 N.E.2d 353.) Rereading them enabled the jury to consider the appropriate law applicable to the facts.

No abuse of discretion is found in the circuit court's response to the jury's questions in this case. *People v. Palmer* (1982), 111 Ill. App. 3d 800, 807, 444 N.E.2d 678.

## II

■ Defendant next challenges the applicability of two other IPI instructions given the jury, which had been submitted by the State, Nos. 14 and 15, concerning an aggressor's use of force. These instructions were taken from IPI Criminal 2d Nos. 24—25.09 and 24—25.11, respectively, and read as follows:

"[No. 14.] A person who initially provokes the use of force against himself is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person; or

he in good faith withdraws from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and terminate the use of force, but the other person continues or resumes the use of force.

[No. 15.] A person is not justified in the use of force if he initially provokes the use of force against himself with the intent to use that force as an excuse to inflict bodily harm upon the other person."

Defendant insists that these instructions are neither consistent with the State's theory of unprovoked aggression by defendant nor the defense theory of self-defense and therefore confused the jury. Defendant maintains that these instructions are appropriate only when an ongoing physical struggle is taking place. Instructions concerning an aggressor's justifiable use of force may be used if the State presents evidence that defendant was the aggressor (*People v. Fleming* (1987), 155 Ill. App. 3d 29, 37, 507 N.E.2d 954; *People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 537, 463 N.E.2d 139), or even if there is a ques-

tion of whether defendant was the initial aggressor (*People v. Denson* (1985), 139 Ill. App. 3d 914, 925, 487 N.E.2d 777, *cert. denied* (1986), 479 U.S. 837, 93 L. Ed. 2d 80, 107 S. Ct. 137; *People v. Townsend* (1985), 136 Ill. App. 3d 385, 391, 483 N.E.2d 340, *appeal denied* (1985), 111 Ill. 2d 563).

■■ At bar, the occurrence witnesses testified defendant shouted hostile gang slogans, made antagonistic gang signals and then began shooting, which constituted evidence that defendant was the aggressor, although defendant's own testimony indicated that Ellis' group was the aggressor. This evidence raised the question or whether or not defendant was the initial aggressor. The jury received instructions on self-defense as well as on an aggressor's use of force and was thereby enabled to resolve the issue on either hypothesis. (*People v. Townsend* (1985), 136 Ill. App. 3d 385, 392, 483 N.E.2d 340; see *People v. Fleming* (1987), 155 Ill. App. 3d 29, 37, 507 N.E.2d 954.) There was no error in giving these instructions.

### III

■■ ■ It is next claimed by defendant that the court improperly restricted defense cross-examination of the arresting officer by precluding questions of whether Ephraim Sanchez was charged in the shooting. Several witnesses identified Sanchez as present during the shooting. Defendant suggests that if the jury realized Sanchez was not charged, that could indicate both that the State distrusted some of its own witnesses and that defendant was not involved in concerted action, making a self-defense claim more credible.

The scope of cross-examination in a criminal case is within the discretion of the circuit court; its decision will be reversed only if there is an abuse of discretion prejudicial to defendant. (*People v. Smylie* (1981), 103 Ill. App. 3d 679, 684, 431 N.E.2d 1130; see *People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286.) Irrelevant evidence which might confuse or mislead the jury is properly excluded. *People v. Smylie* (1981), 103 Ill. App. 3d 679, 684, 431 N.E.2d 1130.

■■ In the case before us, those witnesses who identified Sanchez merely stated that he was present: only one testified that he made gang signs, another stated Sanchez was not doing anything, a third just stated Sanchez was there. Another witness asserted only defendant made gang signs. The State did not contend the shooting was the result of concerted action. The information about whether Sanchez was charged had no bearing on the credibility of the State's witnesses, as they did not testify that Sanchez did anything, except for disputed testimony concerning whether he made gang signs. The circuit court

found the excluded question irrelevant; in so holding it neither abused its discretion nor prejudiced defendant.

## IV

■■ ■ Finally, defendant contends his sentence was excessive because the court failed to consider his rehabilitative potential. Defendant urges that the court's sentence of 35 years' imprisonment was aimed solely at retribution, ignoring defendant's exemplary conduct since his arrest.

A teacher and a social worker at the Cook County jail school wrote letters for defendant, recommending leniency and stating defendant was a good candidate for rehabilitation. Defendant expressed remorse. The State noted that he had received one year's probation for residential burglary as a delinquent. In passing sentence, the circuit court stated it was considering all evidence, including defendant's age, delinquency probation and the two letters submitted. The court found the murder brutal and heinous but did not impose an extended term. The court emphasized deterrence.

Reviewing courts are required to give great weight to the judgment of the circuit court in evaluating the appropriateness of punishment. (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A sentence should not be altered absent an abuse of discretion. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473.) The sentence given defendant here was within the statutory range of 20 to 40 years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(a).) The court specifically stated that it considered defendant's youth and the letters which concerned his rehabilitative potential. (See *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 825, 502 N.E.2d 422.) The nature of the crime, protection of the public, deterrence, and punishment are relevant as well as a defendant's youth and rehabilitation prospects. (*People v. West* (1977), 54 Ill. App. 3d 903, 909, 370 N.E.2d 265.) Accordingly, no abuse by the circuit court of its discretion in sentencing defendant is found.

For the foregoing reasons, the jury's verdict and judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO, P.J., and BILANDIC, J., concur.