THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TEODORO TOSTADO, Defendant-Appellant.

First District (5th Division)    No. 79-2438

Opinion filed January 23, 1981.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant was indicted for the reckless homicides of Jose Martinez and Michael DeLeon. (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.) After the trial

court granted defendant's motion acquitting him of the reckless homicide of DeLeon, a jury found him guilty of the reckless homicide of Martinez. Defendant was sentenced to a year in prison and now appeals. He contends that: (1) the trial court erred in refusing to further instruct the jurors upon their request; and (2) there was no evidence that the body examined by the pathologist was that of the victim Martinez. We affirm.

The facts can be briefly stated initially and will be discussed more fully as needed to dispose of defendant's contentions. The evidence introduced at trial showed that in the early morning hours of August 14, 1977, defendant, accompanied by several friends who had had a couple of whiskeys, was driving a car in the wrong direction on a one-way street at a speed of approximately 60 miles per hour (30 miles per hour over the posted limit) when they collided broadside with a taxicab at an intersection. The two occupants in the taxi died as a result of injuries received in the collision. Among others, the jury received Illinois Pattern Jury Instructions, Criminal, No. 7.10 (1968) (hereinafter cited as IPI Criminal), which provided:

> "To sustain the charge of reckless homicide, the State must prove the following propositions:
>
> *First*: That the defendant caused the death of Jose Martinez, by driving a motor vehicle; and
>
> *Second*: That the defendant drove the motor vehicle recklessly; and
>
> *Third*: That the defendant drove the motor vehicle in a manner likely to cause death or great bodily harm.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The jury retired to deliberate at approximately 3:30 p.m. The jury sent a pencilled note to the trial judge asking "Must we agree that the victim was Jose Martinez to find the defendant guilty?" The note also had "6:10" written in ink upon it. Defense counsel suggested that the jury's note be answered with a simple "Yes." The State argued that it was unnecessary for the jury to find that the victim was in fact named Jose Martinez but rather that the body given that name died as a result of defendant's acts. The trial judge recognized his discretion to further instruct the jury but found that a simple answer would be insufficient and that the jury had been adequately instructed. He therefore sent the

following reply to the jury: "You have been instructed on the law that applies to this case. You have those instructions." According to the trial judge's recollections, the note was returned to the jury at about 7:05 p.m., and the jury reached its verdict at 7:15 p.m.

I.

OPINION

■■ Defendant contends that the trial court's refusal to further instruct the jury was reversible error since the inquiry regarding the identity of the victim involved a question of law which the court had a duty to clarify. (See *People v. Land* (1975), 34 Ill. App. 3d 548, 550, 340 N.E.2d 44, 46; *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 1035, 288 N.E.2d 622, 627; *People v. Harmon* (1968), 104 Ill. App. 2d 294, 301, 244 N.E.2d 358, 361.) We do not find that any error was committed. IPI Criminal No. 7.10 clearly informed the jury that the State had to prove beyond a reasonable doubt that defendant had caused the death of Jose Martinez. To establish the elements set out in the paragraph designated *"First"* in the instruction, the State had to prove that: (1) the body found at the accident scene was dead; (2) the body was identified as that of Jose Martinez; and (3) defendant's acts caused the death of the person so identified. The jury's question is ambiguous in nature, and any response to the question may have required a colloquy between the court and the jury, a further explanation of the facts, and perhaps an expression of the trial court's opinion on the evidence. The jury was fully and properly instructed on the law as it related to the instant set of facts, and the trial court was aware of the jury's problem. The instructions were clear and in common language which the jury could understand. Under these circumstances the trial court properly exercised its discretion in not answering the jury's question or giving additional instructions. (*People v. Charles* (1977), 46 Ill. App. 3d 485, 489, 360 N.E.2d 1214, 1217; *People v. Jones* (1976), 40 Ill. App. 3d 771, 775, 353 N.E.2d 79, 82.) The trial court's direction that the jury follow the instructions should have dispelled any confusion about the necessity of establishing the victim's identity as Jose Martinez. (See *People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 492, 405 N.E.2d 844, 851.) We therefore find no error in the judge's response to the jury's inquiry.

II.

Defendant also contends that the trial court erred in failing to grant his motion for acquittal of the reckless homicide of Martinez since there was no competent evidence to prove that the body about which the pathologist testified was that of Jose Martinez or a victim of the car accident.

The pertinent evidence presented at trial showed the following. An attendant employed at a gas station at the corner in question testified that he saw a car approaching the intersection from the wrong direction at about 60 miles per hour. The taxi was stopped at the corner and proceeded when the light turned green. It was then hit broadside by the car and flipped onto its side. When he went to the scene, he saw a body on the street and another in the taxi.

Craig Meyrer testified that he was a fire department paramedic assigned to ambulance 45 and responded to the instant accident. When he arrived at the scene, he saw a man lying on the street next to the taxi. He placed the body in the ambulance, checked for vital signs but did not detect any which indicated that the body was dead. The body was taken to a police squadrol. He treated two other persons whom he transported to a hospital.

Chicago police officer Lopez testified that when he arrived at the accident scene he saw a man in ambulance 45, several persons on the ground, and a male in the rear of the taxi. After the man was removed from the taxi, Lopez removed a chauffeur's license from the taxi which had the name Jose Martinez on it and included a photograph. He compared the photograph with the man who was in ambulance 45 and found that it was a picture of that person. He also identified State's exhibit No. 6 as being a photograph of the man he saw in ambulance 45. He later went to Cook County Hospital and saw Officer Ruiz at the emergency room. Officer Ruiz took him to a cubicle and removed a white sheet from a body there. Lopez testified that the body was the same individual whose picture was on the chauffeur's license and whom he had seen in ambulance 45. It was also the same person depicted in State's exhibit No. 6.

On cross-examination Lopez testified that the man he saw on August 14 differed from the man depicted in the photograph in that his sideburns were connected to his mustache and he had a lot of facial hair. He did not notice any bruises, bumps or blood on the man's head or face. He stated that the man had been transported to the hospital by Officer Ruiz by beat 1272 squadrol although his report referred to beat 1971.

Chicago police officer Ruiz testified that on the night in question he was assigned to squadrol 1272. He arrived at the accident scene and saw Officer Lopez and several others. He went to fire department ambulance 45 and removed a body from the ambulance and put it in his squadrol. He then transported the body to a cubicle in Cook County Hospital. He identified State's exhibit No. 6 as a photograph of the individual he transported. He later took the body from the hospital to Cook County Morgue by means of a tunnel. He signed the body in with a morgue attendant who made out a tag with the body's name, the date of the

incident and a serial number. Ruiz then wired the tag to one of the victim's toes. He identified State's exhibit No. 10 as being that tag.

On cross-examination Ruiz testified that the State's exhibit No. 6 differed from the person he saw in that the person had long sideburns which connected with his mustache. He could not recall any marks, cuts or bruises on the person's face.

A pathologist testified that he first saw State's exhibit No. 10 on August 14, 1977, when he performed an autopsy on a certain body. In the pathologist's opinion, the individual died of multiple internal injuries. The body had several skull fractures, abrasions on its face, two black eyes, and an ear ripped and hanging from its head.

An assistant garage manager for Checker Cab Company testified that he leased a cab to Jose Martinez on August 13, 1977. He identified State's exhibit No. 6 as being a photograph of Jose Martinez. He did not remember whether Martinez had long sideburns on that date.

State's exhibits Nos. 6 and 10 were admitted into evidence. The jury was informed that exhibit No. 10, the toe tag, was not admitted for the truth of the words and numbers contained on it but solely for the purpose of determining whether the body that the pathologist examined was the same body which Officer Ruiz transported from Cook County Hospital to the morgue.

Defendant contends that the evidence showed that the body examined by the pathologist was not that of the person injured at the accident scene nor that of Jose Martinez. He contends that the chain of possession and identification of the body were insufficient and that there was no evidence from which it can be determined that the body examined was that of Martinez or that the body was the one transported by Ruiz. He also notes that while the pathologist noted various facial and head injuries on the body, the police officers did not.

■■■ The elements to be proved in cases of criminal homicide are proof of death and criminal agency causing death. (*People v. Benson* (1960), 19 Ill. 2d 50, 58, 166 N.E.2d 80, 84; *People v. Carbona* (1975), 27 Ill. App. 3d 988, 1006, 327 N.E.2d 546, 563, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) The identity of the victim as charged in the indictment must be proved by the State so that a defendant can prepare his defense and also to avoid double jeopardy problems. (*People v. Rettig* (1970), 131 Ill. App. 2d 687, 690, 264 N.E.2d 835, 837, *aff'd* (1972), 50 Ill. 2d 317, 278 N.E.2d 781, *cert. denied* (1972), 409 U.S. 895, 34 L. Ed. 2d 152, 93 S. Ct. 186.) Proof of death and the identity of the deceased may be established by circumstantial evidence. (*People v. Sullivan* (1977), 48 Ill. App. 3d 555, 560, 362 N.E.2d 1313, 1317; *People v. Carbona*, at 1006.) A review of the instant record reveals sufficient circumstantial evidence excluding the pathologist's testimony to establish that Jose Martinez died

as a result of defendant's acts. The record also clearly demonstrates that the body examined by the pathologist was the same body which Officer Ruiz transported and was that of Jose Martinez.

The gas station attendant testified that the taxi entered the intersection when the light turned green and was then struck by defendant's car. When he approached the scene, he saw a body on the street and one in the taxi. Craig Meyrer, the paramedic, took the body from the street into ambulance 45 but was unable to observe any vital signs, the lack of which indicated the body was dead. Officer Lopez compared the picture on Jose Martinez' chauffeur's license with the body in the ambulance and found that they matched. Lopez also identified State's exhibit No. 6 (which the assistant garage manager identified as a picture of Martinez) as being a picture of the man in the ambulance and later in the hospital. Officer Ruiz also identified exhibit No. 6 as being a picture of the man he transported to the hospital and later to the morgue. He identified the tag which he attached to the toe of the body when he left it at the morgue. This evidence and the photographic identification of the body established that Jose Martinez was the driver of the taxi and was alive just prior to the collision with defendant's car. After the collision, Martinez was found on the street and about 20 minutes later the paramedic found him to be dead. The body was later transported to and inventoried at the morgue. The fact of Martinez' death was clearly established by this evidence.

■■ The testimony of the pathologist regarding the cause of death, while desirable, was not absolutely necessary in this case because the defendant's acts were established as the cause of death beyond a reasonable doubt by other competent evidence. (See *People v. Jones* (1961), 22 Ill. 2d 592, 596, 177 N.E.2d 112, 114; *People v. Brown* (1978), 57 Ill. App. 3d 528, 531, 373 N.E.2d 459, 461.) Martinez was alive when the taxi entered the intersection but was dead about 20 minutes later and was inventoried at the morgue. The impact was clearly of a sufficient magnitude to cause death and since there is no suggestion that Martinez' death was caused by a supervening act disconnected from defendant's acts, it must be presumed that his death resulted from injuries received from the collision. (*People v. Meyers* (1945), 392 Ill. 355, 359, 64 N.E.2d 531, 533; see *People v. Jones*, at 597.) Where, as in the instant case, "the facts adduced engender such an obvious association between the act and death that the connection is easily understood from common knowledge and experience, no strenuous technical explanations are required by the law as adequate proof." (*People v. Brown*, at 531; see *People v. Love* (1978), 71 Ill. 2d 74, 81, 373 N.E.2d 1312, 1316.) Without considering the pathologist's testimony, the evidence established beyond a reasonable doubt that Jose Martinez died as a result of defendant's acts.

A review of the pathologist's testimony reveals that his attempts to identify State's exhibit No. 10 were interrupted by several objections and subsequent sidebars, and he did not identify that exhibit before the jury as the toe tag attached to the body he examined. However, it is amply clear from the sidebar statements of the pathologist made during his testimony that the exhibit was attached to the body he examined, which was known to him as Jose Martinez and was so identified by the other witnesses during trial.

Defendant suggests that the fact that the police officers did not notice the facial injuries described by the pathologist shows that the bodies described by the witnesses were not the same. As already discussed, the death and cause of death of Jose Martinez were adequately established by the testimony of other evidence independent of the pathologist's testimony. The discrepancies between the police officers' testimony and that of the pathologist are not of great consequence. The record discloses that the pathologist examined the body under intense light which would facilitate observation of the injuries. In addition, it was his duty to recognize and note such injuries, whereas the officers were not required to conduct such an examination. Their failure to note the injuries would be factors to be considered by the jury in assessing the weight to be given to their testimony. The same is true of the differences noted by the police in the victim's facial hair between the picture and the body. "A reviewing court may not substitute its judgment for that of the trier of fact 'on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' " (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The failure of the officers to notice the facial disfigurations and the differences in the facial hair in the photograph and on the victim do not raise a reasonable doubt of defendant's guilt of Martinez' homicide.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.