THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JIMMY ROSS, JR., Defendant-Appellant.

First District (2nd Division)    No. 80-886

Opinion filed October 20, 1981.

Ralph Ruebner, Nancy Abrahams, and Scott Graham, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, George M. Velcich, and Michael J. Kelly, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Jimmy Ross, Jr., was charged by information with attempt (murder) and aggravated battery. A jury found him guilty of aggravated battery and he was sentenced to serve 2 years in the Illinois Department of Corrections. Ross appeals, asserting: (1) he was denied a fair trial by the admission of improper rebuttal testimony; (2) he was denied a fair trial by the trial court's failure to answer certain questions of law tendered by the jury; and (3) it was not proved beyond a reasonable doubt that he was not justified in his use of force.

On June 15, 1977, Bobby Lee Wilson accused defendant's father and defendant, who wasn't present, of stealing the wheel covers from Wilson's car. An argument and fight ensued and defendant's father sustained a broken jaw. Defendant's father testified that during the argument Wilson threatened to "get" defendant for taking the wheel covers from the car.

On the evening of June 19, 1977, defendant helped his sister bring clothing to a laundromat. Fearing that Wilson was hunting for him, defendant went to a friend's home to get a sawed-off shotgun for protection. Defendant put the weapon in the laundry bag and then proceeded to walk west on Fifth Street towards the laundromat. The testimony is conflicting as to what happened next. Defendant's testimony, which was substantially corroborated by other witnesses, was that Wilson and another man began running towards defendant from across Fifth Street and Wilson fired two shots at defendant with a silver .38-caliber revolver. Defendant then pulled the shotgun from the laundry bag and shot Wilson in the back of his shoulder just as Wilson turned away. Defendant testified Wilson was approximately 40 feet away when defendant shot him. Defendant then broke the front window of Wilson's car with the butt of the shotgun.

Wilson's testimony, which also was corroborated by other witnesses, was that Wilson and a friend exited a tavern on Fifth Street and noticed defendant holding a bag between his legs. After walking about half a block, Wilson heard footsteps behind him and a voice ordering him to put his hands up. Wilson, who testified he was unarmed, turned and saw defendant holding a sawed-off shotgun. When defendant took his eyes off Wilson, the latter attempted to flee. He was only 10 to 15 feet from defendant when he heard the shotgun discharge and felt pellets hit him in the right shoulder. Wilson continued to run down Fifth Street until he fell between two parked cars.

In rebuttal the State called Fred Henderson to refute defendant's contention that he acted in self-defense after Wilson had fired at him. Defense counsel objected, arguing that Henderson's testimony should have been included in the State's case-in-chief. The trial court admitted Henderson's testimony for the limited purpose of rebutting defendant's claim of multiple shots.

During its deliberations, the jury sent three inquiries to the trial judge. The first two asked:

(1) "Is it possible for a man to be guilty of battery, if the assault is done in self-defense? What is the difference between the two?"

(2) "If battery means that he knowingly and intentionally caused bodily harm, can a person do this while he still reasonably believes that such conduct is necessary to defend himself? That is self-defense."

A conference was held regarding these inquiries. The trial judge responded to the jury that he believed the written instructions given to the jury adequately answered the questions. The jury continued deliberating and sent a third inquiry to the judge, asking:

"Can anyone possibly back out of the signed papers before the deliberations are over?"

Before the judge responded to this inquiry, the jury announced they had reached a verdict. The jury found defendant guilty of aggravated battery causing great bodily harm, guilty of aggravated battery while using a deadly weapon, and not guilty of attempt (murder). After denying defendant's motion for a new trial, the court sentenced defendant to serve 2 years in the Illinois Department of Corrections.

Defendant's first contention on appeal is that he was denied a fair trial when the trial court admitted the testimony of Fred Henderson in the State's rebuttal case. During the State's case in chief, four witnesses testified that they heard only one shot. Defendant later called four witnesses who testified they heard multiple shots. Over defense counsel's objection, the trial court then permitted Henderson's rebuttal testimony for the limited purpose of rebutting defendant's claim of multiple gunshots. Defense counsel declined the opportunity for surrebuttal. Defendant asserts that Henderson's testimony was repetitious and cumulative of the evidence presented during the State's case in chief and was therefore improper rebuttal.

■■ Trial courts may admit the State's rebuttal evidence when it tends to explain, repel, contradict or disprove defendant's evidence. (*People v. Waller* (1977), 67 Ill. 2d 381, 387, 367 N.E.2d 1283.) Although testimony which would be proper in the State's case in chief should not be reserved for rebuttal, these matters rest largely within the discretion of the trial

court. (*People v. Lion* (1957), 10 Ill. 2d 208, 217, 139 N.E.2d 757.) That the testimony could have been used in the State's case-in-chief does not in itself render it improper for rebuttal. (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 1005, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) A decision by the trial court permitting rebuttal testimony will not be reversed on appeal unless the trial court abused its discretion and the defendant was thereby prejudiced. *People v. Thornton* (1977), 54 Ill. App. 3d 202, 207, 369 N.E.2d 358.

■■ In the case at bar, the State claims it was unaware that defendant would use as a defense the claim that Wilson was the first to open fire. The State therefore argues that it offered Henderson's testimony in rebuttal only after hearing the testimony of defense witnesses that multiple shots were fired. However, defense counsel's opening statement should have made the State aware that such a defense would be used. Additionally, four State's witnesses testified to a single shot being fired. It therefore appears that the State's rebuttal evidence could have been used in its case-in-chief. We do not find, however, that the trial court's decision to allow Henderson to testify in rebuttal amounted to an abuse of discretion. Defendant argues, in support of his claim that the rebuttal testimony was prejudicial, that Henderson was the fifth witness to testify that only one shot was fired and that Henderson was the last witness to be heard by the jury. Defendant's argument is unfounded. After the jury heard four witnesses testify that only one shot was fired and four others testify that multiple shots were fired, the limited testimony of one additional witness that a single shot was fired did not prejudice defendant. Defendant's claim that he was prejudiced because Henderson was the last witness to be heard by the jury is without support in either the record or the case law. Additionally, defendant had the opportunity for surrebuttal and chose not to use it. Finding no evidence of prejudice to defendant in the admission of the rebuttal testimony, we conclude that no reversible error occurred. See *People v. Egan* (1978), 65 Ill. App. 3d 501, 511, 382 N.E.2d 477.

■■ Defendant's next contention is that he was denied a fair trial when the court below refused to answer questions tendered by the jury during its deliberations. The trial court decided against answering the questions because it believed that the instructions, taken from the Illinois Pattern Jury Instructions, adequately explained the applicable law to the jury. The trial court conveyed this reason in writing to the jurors when it notified them that the inquiries would not be answered. A review of the questions tendered by the jury reveals that the trial court acted properly in refusing to answer those inquiries. As regards the first two inquiries, the instructions given quite adequately explained the concept of self-defense

and the elements of battery. As was discussed in *People v. Tostado* (1981), 92 Ill. App. 3d 837, 416 N.E.2d 353, answering the jury's questions might have engaged the court and jury in a colloquy which in turn could convey the court's opinion on the evidence to the jury. (92 Ill. App. 3d 837, 839.) Since the jury instructions in the present case were easily understandable and sufficiently explained the applicable law, the trial court properly exercised its discretion in declining to answer the jury's inquiries. Each of the cases cited by defendant is distinguishable from the case at bar. In both *People v. Morris* (1980), 81 Ill. App. 3d 288, 290-91, 401 N.E.2d 284, and *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 1035, 288 N.E.2d 622, the trial courts failed to give the juries all the necessary instructions. In the present case, all necessary instructions were given. In *People v. Land* (1975), 34 Ill. App. 3d 548, 34 N.E.2d 44, the court improperly refused to rectify the jury's inability to understand "some words" in the instructions. There is no evidence that such is the case here. It is not an abuse of discretion for the trial court to decline to elaborate on complete and understandable instructions. The instructions given here fully and understandably explained the concept of self-defense and its effect on a charge of battery. No error occurred as a result of the trial court's reliance on the instructions as originally tendered to the jury.

■■ Regarding the jury's third inquiry (which the trial court interpreted as asking if a juror can change his decision after he has signed a verdict form), the jury announced it had reached a verdict before the court responded to the inquiry. We note that after announcing its decision the jury was polled and affirmed the guilty verdict. Defendant has failed to show any prejudice in the lower court's failure to answer the third inquiry. Such a showing of prejudice to defendant is required for this court to reverse due to trial court error of this sort. See *People v. Simms* (1976), 38 Ill. App. 3d 703, 707, 348 N.E.2d 478, *cert. denied* (1977), 429 U.S. 1106, 51 L. Ed. 2d 558, 97 S. Ct. 1138.

■■ Defendant's final contention is that the State failed to prove beyond a reasonable doubt that he was not justified in his use of force against Wilson. When conflicting evidence is presented on this issue, it is for the trier of fact to assess the credibility of the witnesses and reach a determination. (*People v. McClain* (1951), 410 Ill. 280, 285-86, 102 N.E.2d 134.) This court will not substitute its judgment for the jury's "unless the evidence is palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of the defendant's guilt." (*People v. Johnson* (1954), 2 Ill. 2d 165, 172, 117 N.E.2d 91.) It is undisputed that Wilson was shot in the back with a sawed-off shotgun by defendant. In addition, numerous witnesses testified that Wilson was unarmed and was moving when defendant shot him. We

conclude that the jury's determination that defendant was not justified in shooting Wilson was not palpably contrary to the evidence or so unreasonable as to raise a reasonable doubt of defendant's guilt.

The judgment below is affirmed.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.