THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARRYL REID, Defendant-Appellant.

First District (3rd Division)   No. 85—2582

Opinion filed August 3, 1988.—Rehearing denied October 5, 1988.

McNAMARA, J., dissenting.

Steven Clark and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., John A. Gasiorowski, and Susan J. Crane, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

A jury found defendant Darryl Reid guilty of murder and armed robbery and the trial court sentenced him to concurrent terms of 20 years' and 9 years' imprisonment. Defendant appeals.

On July 26, 1984, defendant was in his family's apartment with his older sister Joanne, her boyfriend Robert Davis, and their friend Joseph Brooks. At that time defendant was 15 years old, 4 feet 8 inches tall, and he weighed 70 pounds. Brooks had a .22 caliber revolver and bullets. In defendant's presence, Davis and Brooks discussed robbery and decided to look for an old man to rob. Brooks gave Davis the gun and the three boys left the apartment. They saw Herbert Madison get out of a car and enter a nearby apartment build-

ing. The three boys went into that building and one of the boys knocked on the door to Michelle Matthews' apartment. Madison was standing at the doorway of the apartment across the hall, talking with the occupant of that apartment. Defendant asked Matthews whether their friend Nate was in her apartment. He was not.

Madison left the building and Brooks and Davis followed him while defendant continued to talk to Matthews. Defendant saw Brooks and Davis talking to Madison outside and he went to join them. Davis and defendant stood in front of Madison, each to one side, and Brooks stood behind Madison. Madison and Davis struggled briefly over Madison's wallet, then Davis shot Madison. Madison died a few hours later.

Defendant, Davis and Brooks ran back to defendant's apartment. Davis left to get change for Madison's $20 bill. Within an hour after the robbery, police found a wallet and several pieces of identification for Madison on the ground outside an apartment building. An officer also noticed a card on a window sill above the wallet. Police went to that apartment, where they found defendant, his sister, and the gun which had been used in the robbery. They placed defendant under arrest. This was defendant's first contact with the criminal justice system. That afternoon, after talking with his mother, defendant discussed the incident with an assistant State's Attorney, Patricia DeOca, who reduced defendant's statement to writing. Defendant made a more extensive statement later that evening in the presence of his mother, a police officer, a court reporter, and DeOca.

Prior to trial defendant moved to suppress the statements on the grounds that he had not received *Miranda* warnings before he made his initial statements to police in the police car after his arrest and he had never understood his rights. At the hearing on the motion defendant testified that the officers who took him to the police station asked defendant about the crime, although they had not given defendant his *Miranda* warnings, and he answered their questions. After defendant arrived at the police station, a woman told him that he had the right to remain silent; and she asked if he understood what that meant. He testified that he said "Yes" although he did not understand, because he did not want to be embarrassed. She told him anything he said could be used against him in court, and asked him if he understood. Again he said "Yes" although he did not understand. He did not understand the other warnings she gave him because he did not know what "attorney," "appoint," "represent," and "right" meant. When defendant's mother arrived at the police station, she told defendant to tell the truth.

On cross-examination defendant admitted that he knew what "lawyer," "court," "used," "present," and "silent" meant. However, defendant maintained that he did not understand what the assistant State's Attorney meant when she told him that he had a right to remain silent. Defendant testified that he read the first two or three pages of each of the transcribed statements, but he did not finish reading either one. He initialed all of the pages and he signed at the end of each statement. Defendant testified that a police officer stepped on his foot and slapped him. Defense counsel then amended the motion to suppress statements, adding the allegation that the statements were the product of physical coercion. The trial court responded, "I'll recess at this point, so we are sure where the burden of proof lies."

Saul Levy, school psychologist for the Chicago Board of Education, testified that on March 15, 1984, he spent three hours testing defendant's intelligence because defendant was doing poorly and becoming disruptive in school. Defendant's full-scale IQ score was 78.

Dr. Joseph Hahn, administrator of the program bureau of child studies for the Chicago public schools, testified for the defense as an expert on the interpretation of psychological tests. Based on the results from Levy's testing of defendant, Hahn concluded that defendant was a slow learner. Although defendant graduated eighth grade when he was 15, his test results showed that his reading and cognitive abilities were around third-grade level. His reading comprehension score was equal to the average for children beginning third grade. In Hahn's opinion, a child at that reading level would not comprehend exactly what "You have the right to remain silent" means. The child would not understand the statements, "You have a right to have an attorney represent you," and "If you cannot afford an attorney, one would be appointed for you to represent you during this interrogation." The child would not fully grasp the concepts involved in the statement, "Anything you say here may be used against you in a court of law."

Several police officers testified that they saw defendant on July 26, 1984, and they did not slap defendant or hit him in any way, and they did not see any other police officers hit or slap defendant. Detective Catherine Reardon testified that she took custody of defendant after his arrest, and she drove defendant to the police station. She did not discuss the case with defendant and she did not hear any other officer discuss the case with defendant.

DeOca testified that defendant appeared to read each page of the statements, although he did not suggest any corrections. Defendant

never mentioned that police had hit or stepped on him, and he never stated that he did not understand the rights which DeOca read to him.

Naomi Cartwright, school psychologist for the Chicago Board of Education, testified for the State that on December 18, 1984, she tested defendant, using three standard intelligence tests. On the Test of Nonverbal Intelligence, defendant received a score of 88 which reflects low average nonverbal intelligence. On a reading test in which Cartwright asked defendant to pronounce a set of words, defendant showed that he had the ability to pronounce written words at a fifth grade, second month, level. Cartwright also administered the Monroe-Sherman Achievement Test, to determine defendant's ability to understand paragraph meaning, but she did not time the test. The test is a timed test, and therefore defendant's scores were not comparable to the standard scaled scores. However, if he had been able to give all of the responses which he eventually gave in the standard amount of time, his score would have been equal to that of the average student starting sixth grade. Ms. Cartwright admitted on cross-examination that it is not unusual for a child of defendant's mental age to try to conceal his lack of knowledge or understanding out of embarrassment.

In ruling on the motion to suppress, the court stated:

> "In a sense, [defense counselors] have the burden of persuasion, even though there was an issue which suggested that perhaps they could argue the voluntariness issue that the State was assuming as part of the motion, I think, to quash the [statements].
>
> I can say, based on the record before me that there, really, is no merit to that portion of the motion, so what is left is what was originally set forth in the motion, and that is the question of whether the defendant sufficiently understood the rights he allegedly waived at the time he made a statement to the police."

Both of defendant's statements were introduced into evidence at trial. In his statements defendant admitted that, after Davis and Brooks stopped Madison, Davis told defendant to check Madison's pockets for a wallet. Defendant put his hand into a pocket and found some change, but he did not take any of it. After they returned to defendant's apartment Davis offered to split the money with Brooks and defendant. Brooks received his share but defendant never received any money. Defendant's statements were substantially corroborated by eyewitnesses who saw Davis rob Madison.

In its instructions to the jury, the court stated:

"A person is legally responsible for the conduct of another person when either before or during the commission of an offense and with the intent to promote or facilitate the commission of that offense, he knowingly \*\*\* attempts to aid the other person in the planning or commission of the offense.
\*\*\*

A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death, \*\*\* he knows that such acts created a strong probability of death \*\*\*; or he's committing the offense of armed robbery."

After the jurors began deliberations, they sent to the judge a question regarding whether they could find defendant guilty of one charge and not guilty of the other. The judge called both attorneys and told them he had decided to respond only that the jurors should continue deliberating on the basis of the instructions they had received. Defense counsel raised no objection when he received the call, but he objected in court the next morning and he asked the court to answer the question. The court refused. The jury deliberated about 14 hours before it returned verdicts of guilty on both counts. In his motion for a new trial defendant again objected to the court's refusal to answer the jury's question.

Defendant argues on appeal that the trial court committed reversible error when it responded to the jurors' question without answering the question. The State contends that defendant waived this objection when defense counsel failed to object promptly when the trial judge called him. Even if this failure can be construed as a waiver of the objection, we must address the issue under the doctrine of plain error (*People v. Jackson* (1980), 89 Ill. App. 3d 461, 479, 411 N.E.2d 893), especially because the evidence in this case was closely balanced, as the length of the jury's deliberations indicated (*People v. Palmer* (1984), 125 Ill. App. 3d 703, 712, 466 N.E.2d 640).

■■ The law pertaining to jury questions in Illinois is clear: "Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members." (*Jackson*, 89 Ill. App. 3d at 479.) Although a trial court may, in its discretion, refrain from answering some jury questions, the court "has the duty to instruct the jury where clarification is requested, the original instructions are incomplete, and the jurors are manifestly confused." *People v. Gathings* (1981), 99 Ill. App. 3d 1135, 1138, 425 N.E.2d 1313.

■ The jury manifested its confusion in this case when it asked

the question, and the legal issue is clearly pertinent to this case. The jury had received no instruction explicitly stating that a finding of guilty on one count did not require a finding of guilty on the other count. The State contends that the original instructions were adequate to answer the jury's question because the trial court submitted four verdict forms: guilty and not guilty of murder, and guilty and not guilty of armed robbery. We believe that this is not an adequate substitute for an explicit response to the jury's question. The State also argues that the trial court exercised its discretion properly because it could not have answered the jury's question without becoming involved in an extended discussion with the jury. We disagree. The trial court could readily have answered the question by stating that the jury could find defendant guilty on one count and not guilty on the other count. (Compare *People v. Ross* (1981), 100 Ill. App. 3d 1093, 1097, 427 N.E.2d 868.) We find that the trial court erred when it failed to answer the jury's question of law arising from the facts of the case when the instructions previously given provided no direct answer to the question.

■ The State contends that evidence regarding the jury deliberations establishes that the error did not prejudice defendant. At a post-trial hearing a juror testified that after the jury had received the judge's response to its question, and after it had voted to convict defendant for armed robbery, on the first ballot the jury voted nine to three in favor of acquitting defendant on the murder charge. In the course of deliberations the nine votes for acquittal changed to votes for conviction. The voting shows that at least nine jurors initially thought that they could vote for acquittal on the murder charge even though they had voted for conviction for armed robbery. However, the evidence did not show how the nine jurors were persuaded to change their votes. If even one juror was swayed by confusion concerning the issue raised in the jury's question, the defendant's conviction was improper. We find that under the circumstances of this case, where the evidence was closely balanced, defendant has adequately shown that he was prejudiced by the trial court's refusal to answer the jury's question. Therefore, we reverse.

■ ■ Defendant argues that the case should be reversed without remand for retrial because the State failed to prove beyond a reasonable doubt that defendant was legally accountable for Davis' actions in the robbery and murder of Madison. In order to prove that defendant was accountable for the crimes, the State needed to prove that, before or during the commission of the offenses, defendant attempted to aid Davis, with the specific intention of facilitating commission of

the offenses. (*People v. Young* (1983), 116 Ill. App. 3d 984, 994, 452 N.E.2d 718.) The trier of fact may consider the circumstances surrounding the offense, including defendant's presence at the scene, his failure to oppose the crime, and his actions after the commission of the offense. (*Young*, 116 Ill. App. 3d at 994.) In the case at bar defendant saw Brooks give Davis a gun and he heard them discuss robbing an old man. He accompanied Davis and Brooks, and when they stopped Madison, defendant stood in front of Madison, partially blocking his way. Defendant reached into one of Madison's pockets when Davis told him to do so. After Davis shot Madison, defendant fled the scene, and when he, Davis and Brooks returned to his apartment, they agreed to split the proceeds three ways. We find that evidence at trial is sufficient to support a finding that defendant attempted to assist Davis in the commission of the crimes. (See *People v. Morgan* (1977), 67 Ill. 2d 1, 8-9, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411.) Therefore, we remand for retrial.

■ Defendant contends that the trial court erred when it denied his motion to suppress statements. Since the State is likely to attempt to introduce the statements into evidence on remand, we address defendant's arguments here. Defendant maintains that the State did not prove that he understood the *Miranda* warnings. Before a defendant's confession may be admitted into evidence, the State must "establish[ ] that [the] statement[ was knowingly, intelligently and voluntarily made." (*People v. Kincaid* (1981), 87 Ill. 2d 107, 116, 429 N.E.2d 508, *cert. denied* (1982), 455 U.S. 1024, 72 L. Ed. 2d 144, 102 S. Ct. 1726.) "In examining the facts and circumstances surrounding a purported waiver of an individual's constitutional rights, the courts of this State have long recognized the special care which should be exercised when evaluating the confessions of youthful or mentally deficient individuals." *People v. Redmon* (1984), 127 Ill. App. 3d 342, 347, 468 N.E.2d 1310.

■ In the case at bar, defendant originally moved to suppress statements based on his inability to understand the *Miranda* warnings, and after cross-examination of defendant, defense counsel amended the motion to include allegations of physical coercion. In deciding the motion the trial court stated that defendant bore "the burden of persuasion." This was clearly incorrect: whenever the State seeks to introduce a confession into evidence, it bears the "heavy burden [of] show[ing] that [the] defendant has waived his constitutional rights in a knowing, intelligent and voluntary manner." (*People v. Brownell* (1980), 79 Ill. 2d 508, 516, 404 N.E.2d 181, *appeal dis-*

*missed* (1980), 449 U.S. 811, 66 L. Ed. 2d 14, 101 S. Ct. 59.) The court qualified its misstatement, indicating that the State had the burden of persuasion on the second portion of the motion, regarding allegations of physical coercion. The court found that the State met its burden on that portion of the motion, as it stated: "[T]here, really, is no merit to that portion of the motion, so what is left is what was originally set forth in the motion, and that is the question of whether the defendant sufficiently understood the rights he allegedly waived \*\*\*." In regard to this part of the motion, the court never rectified its misstatement of the burden of persuasion. At trial on remand, the court must determine whether the State has met its burden of proving that defendant made a knowing and intelligent waiver of his right to counsel.

For the reasons stated above, we reverse the judgment of the trial court and remand for retrial.

Reversed and remanded.

RIZZI, J., concurs.

JUSTICE McNAMARA, dissenting:

I respectfully dissent from the majority holding, which reverses defendant's conviction and finds that the trial court erred when it directed the jury to continue its deliberations using the instructions which it had already received. Those instructions were in fact proper and complete, and the giving of further instructions eight hours after the question had been posed could have been misconstrued by the jury. I also disagree with the majority finding that reversible error resulted from a statement made by the trial court outside the presence of the jury, which did not misstate the law regarding defendant's burden as to the issue of the voluntary nature of his confession, and which did not affect the court's finding regarding the knowing and intelligent factors of the waiver issue.

The majority maintains that the jury received no instruction explicitly stating that a finding of guilty on one count did not require a finding of guilty on the other count.

The original charge to the jury was complete and proper, particularly as to the separate offenses for which the jury was to return verdicts. The jury instructions separated the definitions of the offenses, separated the elements of each offense, and separated the verdicts.

The majority fails to accord proper weight to the fact that the jury received four verdict forms: guilty of murder; not guilty of mur-

der; guilty of armed robbery; and not guilty of armed robbery. The majority merely offers the assertion that it believes "this is not an adequate substitution for an explicit response to the jury's question." 174 Ill. App. 3d at 1015.

The jury received separate, standard IPI instructions on the definition of legal accountability (Illinois Pattern Jury Instructions, Criminal, No. 5.06 (2d ed. 1981) (hereinafter IPI Criminal 2d)); the definition of murder (IPI Criminal 2d No. 7.01); and the definition of armed robbery (IPI Criminal 2d No. 14.01). It also received separate instructions on the elements of murder (IPI Criminal 2d No. 7.02) and the elements of armed robbery (IPI Criminal 2d No. 14.02), along with the direction that if the jury were to "find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." At the conclusion of the court's charge to the jury, it gave a concluding instruction (IPI Criminal 2d No. 26.01), which stated: "The defendant is charged with the offense of murder and armed robbery. You will receive four forms of verdict. As to each charge, you will be given both a 'not guilty' and 'guilty' form of verdict." The court continued:

"The forms read, 'We, the jury, find the defendant, Darryl Reid, guilty of the offense of murder.

We, the jury find the defendant, Darryl Reid, not guilty of the offense of murder.

We, the jury, find the defendant, Darryl Reid, guilty of the offense of armed robbery.

We, the jury, find the defendant, Darryl Reid, not guilty of the offense of armed robbery.' "

There is no question, therefore, that the jury received legally accurate and complete instructions on the offenses charged. This case differs considerably, for example, from *People v. Gathings* (1981), 99 Ill. App. 3d 1135, 425 N.E.2d 1313, where the initial instructions did not fully state the law regarding the question of whether the jury could find defendants guilty of certain offenses and not guilty of other offenses, and where the IPI instruction was modified such that it no longer accurately stated the law.

Generally, it is within the discretion of the trial court to determine when giving a supplemental instruction is appropriate. (*People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359; *People v. Ross* (1981), 100 Ill. App. 3d 1093, 427 N.E.2d 868; *People v. Gathings* (1981), 99 Ill. App. 3d 1135, 425 N.E.2d 1313.) The trial court in the present case understood the relevant law. In regard to an unrelated jury ques-

tion, the court accurately set forth the case law:

"I think the case law in Illinois is clear; that when the jury reaches a question regarding the meaning of an instruction, which is succinctly stated, fairly stated, the Court has an obligation to eliminate the confusion through an accurate statesment [*sic*] of the law that clarifies or responds directly to the question asked."

See, *e.g., People v. Sanders* (1984), 127 Ill. App. 3d 471, 469 N.E.2d 287.

During the first evening of deliberations, the jury asked whether it could find defendant guilty of one charge and not guilty of the other charge. After obtaining the agreement of the attorneys for both sides by telephone, the court instructed the jury to continue its deliberations using the instructions it had already received.

The following morning, the court conferred with counsel concerning a separate, unrelated question posed by the jury. In regard to the question asked the night before, the court cited strong support for its response made the night before. "Clearly the jury might have been asking whether or not they compromise by entering a guilty on one but not the other. That clarification could be detrimental to the position of either the State or the defense."

After it was decided to clarify a different point of law for the jury, defense counsel stated that the court should provide a more substantive answer to the jury's question of the previous night:

"I'm not saying that I did not agree to the procedure last night. But I think as we're going to answer one question that in your Honor's mind is clear and concise, we ought to answer the other question that was asked last night, which is very clear and succinct, and tell the jury they [can] find him guilty of one charge and not guilty of the other."

The prosecutor correctly replied that eight hours of deliberation had passed since the prior night's question and response, with no renewal of the question by the jury. The prosecutor also correctly noted that changing the answer could cause the jury to interpret it as urging them towards one conclusion or another.

The trial court may properly exercise its discretion by not giving additional jury instructions where any answer or explanation more specific than that given by the court might have constituted an improper expression of opinion and where the instructions given were clear and in common understandable language. (*People v. Charles* (1977), 46 Ill. App. 3d 485, 360 N.E.2d 1214.) A trial court may exercise its discretion to refrain from answering a jury's inquiries. (*People*

*v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.) It is not an abuse of discretion for the trial court to decline to elaborate on complete and understandable instructions. (*People v. Ross* (1981), 100 Ill. App. 3d 1093, 427 N.E.2d 868.) Once the trial court has ascertained the nature of the jury's confusion, it is not required to issue additional instructions in all cases, especially if the trial judge determines that further instructions would serve no useful purpose. (*People v. Jones* (1976), 40 Ill. App. 3d 771, 353 N.E.2d 79.) I believe the trial court properly refused defendant's request to alter the original, agreed response given to the jury. I find no abuse of discretion. See, *e.g., People v. Tostado* (1981), 92 Ill. App. 3d 837, 416 N.E.2d 353; *People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 405 N.E.2d 844; *People v. Hooker* (1977), 54 Ill. App. 3d 53, 369 N.E.2d 147; *People v. Charles* (1977), 46 Ill. App. 3d 485, 360 N.E.2d 1214.

The majority finds that the failure to answer the jury's question was plain error, and that the error was prejudicial to defendant, "especially because the evidence in this case was closely balanced." The rule which provides that substantial defects are not waived by failure to make a timely objection applies where the interests of justice require, and it constitutes an exception which is limited to correcting grave errors, or to be applied where the case is close factually and fundamental fairness required that the jury be properly instructed. *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.

I do not believe that the facts presented here could be described as "closely balanced." This was a heinous crime and the proof of defendant's guilt was overwhelming. The majority itself points out that the triers of fact could consider defendant's presence at the scene; defendant's failure to oppose the crime; and defendant's actions after the commission of the offense. The majority highlights certain evidence, including that defendant saw Brooks give Davis a gun; that defendant heard Brooks and Davis discuss robbing an old man; that defendant accompanied Brooks and Davis outside; that defendant stood in front of the victim, partially blocking his way; that defendant reached into the victim's pocket when Davis told him to do so; that defendant fled the scene after Davis shot the victim; that defendant, Davis and Brooks all returned to defendant's apartment; and that defendant agreed with the others to split the proceeds three ways.

Additionally, Glenda Davis watched out her apartment window as the victim entered the building and defendant, Brooks and Davis followed him. She saw them exit the building soon thereafter and watched the robbery and shooting from her window. Michelle Mat-

thews identified Brooks and defendant, whom she had known for two years, as the boys who came to her apartment near that of the victim on that day, just before the shooting. Brooks wore a burgundy scarf around his head and defendant wore a gold T-shirt.

The police arrived at the scene and immediately began looking for three teenagers, one wearing a yellow T-shirt and one with a red scarf. A man told the police that three teenagers ran into a nearby apartment building. The officers found the victim's wallet on the ground behind the building. An open third floor window was above the wallet. In the third floor apartment, the police found defendant, wearing a yellow T-shirt, sweating, breathing hard and acting excited. The officers found a red scarf stuck between the mattress and box spring. A purse contained a .22 caliber revolver with four live rounds, one expended shell and one empty chamber. Defendant thereafter confessed to the crime.

The circumstances here differ substantially from a "closely balanced case."

I would find that no error occurred as a result of the trial court's reliance on the instructions as originally given to the jury. (See *People v. Jones* (1976), 40 Ill. App. 3d 771, 353 N.E.2d 79.) If any error occurred, it was harmless.

I also disagree with the majority's other basis for reversal. It finds that the trial court misstated the burden in regard to the motion to suppress defendant's statements. In his lengthy brief, defendant addresses this point in three sentences and merely cites the general proposition that the burden rests on the prosecution to show a knowing and intelligent waiver. *People v. Redmon* (1984), 127 Ill. App. 3d 342, 468 N.E.2d 1310.

During cross-examination at the hearing on the motion to suppress, defendant alleged for the first time that the police officers slapped him and stepped on his foot before he made his two statements. Defense counsel amended the motion to suppress to include the allegations regarding the involuntary nature of the statements. The challenged language occurred at a point where the court began to address the knowing and intelligent waiver issue. The court then backed up to summarily dismiss the newly added argument regarding the alleged physical coercion. Having disposed of that issue, the court returned to the question which had been extensively argued. While the remarks made during this extended conference with counsel may lack perfect clarity, I find nothing even approaching reversible error.

The majority highlights only a few words, *i.e.*, "the trial court stated that defendant bore 'the burden of persuasion.' " (174 Ill. App.

3d at 1016.) The trial court's statement in context reads:

> "In a sense, [defense attorneys] have the burden of persuasion, even though there was an issue which suggested that perhaps they could argue the voluntariness issue that the State was assuming as part of the motion, I think, to quash the motion.
>
> I can say, based on the record before me that there, really, is no merit to that portion of the motion, so what is left is what was originally set forth in the motion, and that is the question of whether the defendant sufficiently understood the rights he allegedly waived at the time he made a statement to the police."

Furthermore, a reasonable interpretation of the trial court's remarks, when read in the context of the lengthy discussion, is that the court merely referred to the burden of proof defendant carried following the evidence the State had produced regarding the entire waiver issue. In determining whether a confession was voluntarily made, the State bears the burden to establish the voluntariness of a confession by a preponderance of the evidence. *People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123; *People v. King* (1986), 109 Ill. 2d 514, 488 N.E.2d 949, *cert. denied* (1986), 479 U.S. 872, 93 L. Ed. 2d 173, 107 S. Ct. 249.

However, once the State makes out a *prima facie* case of voluntariness, the burden shifts to the defense to produce evidence that the confession was involuntary. (*People v. Cozzi* (1981), 93 Ill. App. 3d 94, 416 N.E.2d 1192; *People v. Slaughter* (1978), 59 Ill. App. 3d 159, 376 N.E.2d 33.) Moreover, it is within the discretion of the trial court to reverse the order of proof requiring the defendant to present evidence prior to the State so that the State may meet its burden of proof after the defense has presented evidence on the issue of voluntariness. *People v. Allen* (1986), 148 Ill. App. 3d 200, 498 N.E.2d 838.

I disagree with the majority that the court misstated the law to counsel, or that reversal of the conviction is required because "[i]n regard to this part of the motion, the court never rectified its misstatement of the burden of persuasion."

Because I do not believe that any of the errors claimed by defendant were prejudicial or require reversal, I would affirm defendant's conviction.